586 So.2d 829 (1991)
ADAMS COUNTY ELECTION COMMISSION, By and Through its Chairperson, Mable McMillian and Adams County Republican Executive Committee, Appellants,
v.
Charles SANDERS, Appellee.
No. 91-CC-877.
Supreme Court of Mississippi.
September 18, 1991.
*830 Robert C. Latham, Adams Forman Truly Firm, Natchez, for appellants.
Joseph Daniel Jaber, Natchez, for appellee.
Before ROY NOBLE LEE, C.J. and SULLIVAN and PITTMAN, JJ.

ORDER
This matter came before a panel of this Court consisting of Roy Noble Lee, C.J., Sullivan and Pittman, J.J. on the emergency appeal brought by Adams County Election Commission and the Republican Party Executive Committee seeking to dissolve a preliminary injunction entered by the Adams County Chancery Court on August 26, 1991, which enjoins the appellants from conducting the primary elections scheduled for September 17, 1991, and the scheduled general election for Adams County Board of Supervisors.
On August 14, 1991, Appellee here and Plaintiff below, Charles Sanders, filed a Complaint for Declaratory Judgment and Injunctive Relief seeking to enjoin the party primary elections for Adams County Supervisors because there has not been an administrative or judicial pre-clearance pursuant to § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c and seeking a declaration that the existing supervisor districts are malapportioned, resulting in an unconstitutional violation of the one person, one vote standard.
Hearing was held in chancery court on August 22, 1991, on the complaint for a preliminary injunction, and on August 26, 1991, the Chancellor rendered a judgment granting a preliminary injunction and enjoining and restraining the Election Commission and other named defendants from conducting the primary and general elections for supervisors. The Chancellor further ordered an election schedule for supervisors. His order provides that if the Justice Department pre-clears the proposed redistricting plan submitted by the Board of Supervisors by October 5, 1991, the First Primary would be held on November 5, 1991, Second Primary on November 19, 1991; if the Justice Department has not pre-cleared the proposed plan by October 5, 1991, the First Primary would be held December 3, 1991, Second Primary December 17, 1991.
From this judgment, appeal was taken. Also, this judgment was submitted to the Justice Department for pre-clearance on August 28, 1991, and the Justice Department notified the Adams County Board of Supervisors on September 6, 1991, that the United States Attorney General interposed no objections to the order at this time.
This Court notes that the Adams County Board of Supervisors, after receiving 1990 census information, recognized that the supervisor districts should be reapportioned, developed a reapportionment plan, held public hearings, adopted the plan, and submitted the plan to the Justice Department on May 31, 1991. On July 30, 1991, near the end of the 60 day period the Justice Department has to interpose objections to the plan, the Adams County Board of Supervisors received a letter from the Justice Department requesting more information and stated that the Justice Department would have 60 more days from the date of submission of the requested information to review the plan with the additional information. The Adams County Board of Supervisors then set about to formulate another *831 plan which would answer the concerns expressed by the Justice Department. The Adams County Board of Supervisors acted diligently to correct malapportionment in the supervisor districts. Unfortunately, the Justice Department, by waiting almost the entire 60 day period after the first plan was submitted to request additional information and then allowing itself another 60 day period to review the plan along with additional information has placed the Adams County Board of Supervisors in the position of not accomplishing a pre-cleared districting plan in time for the scheduled elections.
This Court recognizes that state courts have concurrent jurisdiction with the federal courts to decide whether § 5 of the Voting Rights Act applies to contemplated changes in election procedures and further recognizes that state courts have the duty to uphold federal law, jurisdiction and duty which we gladly accept. We also understand that state courts may not actually grant pre-clearance. Hathorn v. Lovorn, 457 U.S. 255, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1981). See also Greenville School v. Western Line School, 575 So.2d 956, 959 (Miss. 1990); Harrison County v. City of Gulfport, 557 So.2d 780, 788 (Miss. 1990). We recognize that a state court clearly has jurisdiction to decide questions of violation of the one person, one vote standard under the 14th amendment of the United States Constitution as well as under Miss. Const. Art. 3, § 14. Pursuant to Miss. Const. Art. 6, § 147, we do not here today decide which state court, chancery or circuit, should decide such questions, except to note that the plaintiff here requested equitable relief.
In determining whether injunctive relief should issue, a court must consider four factors. First, the movant must show a substantial likelihood that he will ultimately prevail on the merits. The movant is substantially likely to ultimately prevail on the merits of this case for it seems that no one particularly denies that the districts are malapportioned beyond acceptable constitutional limitations.
Second, the movant must show that he will suffer irreparable injury if the injunction is not issued. On this point, the Chancellor erred in finding that the injury to the plaintiff is irreparable. While we recognize the harm of voters voting in districts that are unconstitutionally malapportioned in terms of voter dilution, we also recognize that the movant, as well as all the voters in Adams County, will have a remedy to the malapportioned districts in the near future, for the parties in the case acknowledge that when a reapportionment plan is pre-cleared by the Justice Department, a special election for supervisors will go forward. As stated by the United States Supreme Court, "[t]he possibility that ... other corrective relief will be available at a later date ... weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974) quoting Virginia Petroleum Jobbers Assn. v. FPC, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958). Here, the Board of Supervisors has acted diligently to correct malapportionment and there is an immediately forthcoming remedy for the malapportionment. Even though the elections go forward as scheduled under existing districts, new elections will soon follow under new pre-cleared districts. We wish we could be confident of the dispatch with which pre-clearance might be granted. Mississippi's experience in this regard, however, leaves us dubious. One would surmise that since pre-clearance of the Chancellor's order took only 9 days, the Justice Department might have granted similar expedition to consideration of the plan tendered by the Board of Supervisors.
Third, the injury to the movants must outweigh the potential harm to the opposing party. As to the Election Commission and the Republican Party Executive Committee, the harm is expending funds to hold a special election under the reapportioned districts. All involved admit that a special election is inevitable under the reapportioned districts. The question is simply whether to allow the supervisor elections to go forward as scheduled. Harm to the Election Commission in staying the elections is serious, as expressed by *832 testimony at the hearing. Problems of ballots for the September 17 primary having been printed, the voting machines having been established, and absentee ballots having already been sent out with the supervisor candidates' names on them are very real. The County will be put to great expense to reprint ballots, block out voting machine slots, and obtain an order of "no count" on the absentee ballots. While such considerations may not outweigh a movant's irreparable harm, in this situation the movant has not shown irreparable harm such as to outweigh the harm to the opposing parties.
We also note that the federal courts have denied injunctive relief on the grounds of untimeliness of bringing the suit. See Banks v. Bd. of Ed. City of Peoria, 659 F. Supp. 394, 401 (C.D.Ill. 1987) ("equitable relief in the form of an injunction ... is not available because such a request was not made in a timely manner and it would not be in the public interest to enjoin the election," even "[a]ssuming that the Plaintiffs would be able to meet `the reasonable likelihood of success' standard.")
Finally, injunctive relief should not be adverse to the public interest. We find great harm to the public interest if these scheduled elections do not go forward. First is the problem of incumbents being allowed to remain in office beyond the expiration of their terms. The Chancellor's order makes no provision for the contingency that the Justice Department may not pre-clear a districting plan in order to meet the Chancellor's schedule by even December 3, in which event, the incumbents may be held over indefinitely. As one federal court put it, "The court does not wish to be left in the position of having either to extend the terms of incumbents or to appoint temporary replacement to serve until the new plans are in place. Both alternatives would effectively deny the entire electorate the right to vote and thus seem to offend basic principles of representative government." Dillard v. Crenshaw County, 640 F. Supp. 1347, 1363 (M.D.Ala. 1986).
Second, the Chancellor's order sets forth an election schedule that does not comport with the time frames set forth by the state election code, Miss. Code Ann. § 23-15-1 et seq. (1972, as amended). In Martin v. Mabus, 700 F. Supp. 327 (S.D.Miss. 1988), that court declined to set a compressed schedule for elections:
State policy of Mississippi is expressed in law establishing election schedules... . [U]nder the state election law there is a 60-day mandatory period between the qualification date of candidates and the date of the party primaries. There is a three-week period for any run-offs. There is an additional 60-day period from the time these primary winners, the party nominees, are certified until the date a general election may be scheduled. Accordingly, to hold judicial elections in accordance with state law requires a minimum of 141 days.
Id. at 344.
Furthermore, as that court explained, candidates need time to conduct a full campaign and the voters need time to receive and digest information about the candidates and the election. Id. These arguments are especially persuasive where voters in Adams County will be redistricted; they will need time to gather and digest information about their new district and the candidates who may be running for the first time in newly drawn districts. Thus, besides the fact that the Chancellor's election schedule violates the state election code which in and of itself is adverse to the public interest, such a compressed schedule perpetuates voter confusion and impinges on the voter's ability to make an informed decision.
Because new elections will be held under the new pre-cleared plan, and the Board of Supervisors has tried to redistrict, we find that the Chancellor erred in finding that the harm to the movant outweighs the interest of the public in going forward with the scheduled elections under the state statutory election scheme. The injunction is hereby dissolved and the elections allowed to go forward with the further order that new elections will be called and go forward under state election laws after a redistricting plan is pre-cleared.
*833 This cause is remanded to the the Chancery Court of Adams County for proceedings on the Complaint for Declaratory Relief.
SO ORDERED.
ROBERTSON, J., dissents.