IN THE SUPREME COURT OF MISSISSIPPI
NO. 96-CA-00326-SCT

*CITY OF GRENADA, MISSISSIPPI*

*v.*

*VANNIE HARRELSON, IRENE WILLIAMS AND
WILLIE WILLIAMS IN THEIR CAPACITY AS THE
CITY OF GRENADA ELECTION COMMISSION;
VALLERIA BLAYLOCK IN HER CAPACITY AS CITY
CLERK OF CITY OF GRENADA, MISSISSIPPI, AND
THE "INTERVENORS" LOUISE HUBBARD, JOHN
HANKINS, PAULETTA WILLIAMS, STANFORD
AMOS, DORA W. STEWART AND STEVE ROBINSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/29/96 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JIM M. CRISS |
| | JERRY L. MILLS |
| ATTORNEY FOR APPELLEES: | ELLIS TURNAGE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 4/30/98 |
| MOTION FOR REHEARING FILED: | 5/14/98 |
| MANDATE ISSUED: | 8/27/98 |

**BEFORE PITTMAN, P.J., McRAE AND ROBERTS, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The City of Grenada (hereinafter "the City") is a special charter municipality. The City Charter provides for the election of 7 city councilmen from wards described in Section 4 of the Charter. Elections for mayor and aldermen were to take place on the first Monday of May, 1996. Qualification for and participation in those elections was to open on January 2, 1996 and close on March 9, 1996. Primary elections were to be held on April 18, 1996. In preparation for the election, the City determined that the election procedures and election districts adopted by the City Council in 1992 were not properly adopted. Under Miss. Code Ann. § 21-17-9 (1990) any amendment to a City's Charter must be published for three weeks in a newspaper or posted in three public places for that length of time to give notice to the public of the amendment. Thereafter, if 10% of the electors

request a referendum election on the proposed amendment, an election must take place to permit the electors to approve or disapprove the amendment. Miss. Code Ann. § 21-17-9 (1990). After a 1990 census, the City Council determined that new ward lines needed to be drawn because the 1986 ward lines had become malapportioned in violation of the one-person one-vote rule. Those lines were redrawn and the plan was adopted by the City Council. There was no written ordinance evidencing the amendment. The City submitted the plan and the minutes of the December 2, 1991 meeting in which the plan was adopted, to the Justice Department for preclearance under Section 5 of the Voting Rights Act of 1965. No legal descriptions were submitted to the Justice Department. The Justice Department returned a non-objection letter to the City.

¶2. The City filed a Complaint seeking declaratory judgment and injunctive relief on December 22, 1995. It sought declaratory judgment that:

(1) The election districts set forth in the 1986 Charter Amendment were the last properly adopted districts for the City;

(2) The election districts set out in the 1986 amendment to the City Charter no longer comply with applicable law and regulations; and

(3) That future city elections cannot proceed until an election process and election districts can be adopted by a properly adopted amendment to the City Charter utilizing a process in compliance with Section 21-17-9 of the Mississippi Code of 1972.

The City also asked the circuit court to enter a temporary restraining order and/or a preliminary injunction and/or a permanent injunction against the defendants from conducting elections until such time as an amendment to the City Charter, utilizing the required procedures of Miss. Code Ann. § 21-17-9, could be adopted and implemented. The defendants in this case, and the appellees here, are the three members of the Election Commission and the City Clerk. Thereafter, six citizens and registered voters of Wards 2, 3, 4, 5, and 7 moved to intervene and this motion was granted.

¶3. The circuit court held its first hearing on January 12, 1996. At that hearing, the City Clerk of Grenada testified that it is part of her job to know where the ward lines are. The only evidence she could find showing the ward lines was a map that had been published in the newspaper before a special mayoral election in 1994. She attempted to compare the map to the ward lines set out in the City Charter and found that they did not match up. The ward lines in the Charter were based on the amendment made in 1986. Bill Williams, Jr. ran for city councilman in 1992, and testified that he ran based on the ward lines established by the map published in the newspaper. At the conclusion of the hearing, it was decided that all parties would attempt to get the 1992 amendment passed in compliance with state law before the elections so that the judge would not have to enjoin the elections.

¶4. Another hearing was held on January 24, 1996. At that hearing, the parties had received all of the information the Justice Department had on the 1992 redistricting. The parties left that hearing intending on attempting to adopt the amendment in compliance with state law and holding the elections as scheduled.

¶5. The third and final hearing in this case was held on March 29, 1996. At that hearing, the Mayor

testified that the City Council had adopted the new ward lines as set out in 1992, and had published the amendment in the newspaper. Thereafter, more than 10% of the electors had objected to the amendment, making a special election necessary. Also during the publication time, the Mississippi Supreme Court had affirmed an annexation to the City. At the close of this hearing, the City argued that:

> BY THE COURT: All right. Mr. Mills, do you want to address whether or not I can even do what you asked me to do?

> BY MR. MILLS: Your Honor, we submit that you very clearly can. The one thing that is important is the City has a districting plan. Since under state law the 1992 redistricting plan was not legally adopted and since we have attempted to legally adopt it and utilizing protection reserved to the people of a city that is special chartered such as the City of Grenada, that proposal has been rejected. We submit that the 1985 plan is the only plan that has been legally adopted. It is without question that that plan is unconstitutionally malapportioned. Going back to the '85 plan, it's not an option. Whether the '92 was attempted to be in place, whether it was used simply begs a question. In special charter municipalities the people have a right to request an election on it. There is no way that that election can occur before April 9[th] of this year under state law. So we have an election which would be using ward lines that I don't believe anybody is going to contend have been legally adopted. Once the people requested that, the City Council's hands were tied. There is nothing that can be done. The 1985 malapportioned plan is the plan for the City of Grenada, and we submit that under these circumstances, there is no option but to enjoin the elections or else to proceed under the malapportioned '85 plan.

The trial judge stated that based on this Court's decision in *In re McMillin,* 642 So. 2d 1336 (Miss. 1994), he felt he had no authority to enjoin the election. In his Order, the trial judge found that when the City attempted to amend its Charter and the ward lines set out therein, it did not comply with Miss. Code Ann. § 21-17-9 (1990). He further found that the ward lines established in the City Charter (based on the 1986 amendment) would have to be used for the election even though they were malapportioned. Finally, he found that he had no authority to enjoin the election utilizing the malapportioned ward lines.

¶6. After the circuit court refused to enjoin the elections, the City filed an Emergency Motion for Stay with this Court on April 4, 1996. On April 6, 1996, this Court ordered the election stayed pending further order of this Court. The stay was lifted by this Court on June 21, 1996.

¶7. The City appeals from the Order of the trial court and assigns as error the following issue for this Court's consideration:

### I. DID THE CIRCUIT COURT HAVE AUTHORITY AND JURISDICTION TO ENJOIN AN ILLEGAL ELECTION?

### DISCUSSION OF LAW

¶8. The City argues that the circuit court had the authority and jurisdiction to enjoin the 1996 elections. It cites this Court's decision in *Adams County Election Commission v. Sanders,* 586 So. 2d 829 (Miss. 1991) in support of its position. In that case, Charles Sanders filed a Complaint for

Declaratory Judgment and Injunctive Relief seeking to enjoin the party primary elections for Adams County Supervisors because there had not been an administrative or judicial preclearance pursuant to § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. *Sanders,* 586 So. 2d at 830. The chancery court entered a preliminary injunction and enjoined the Election Commission from conducting the general and primary elections for supervisors. The chancery court also ordered an election schedule for supervisors based on whether or not the Justice Department precleared the proposed redistricting plan. *Id.* The judgment of the chancery court was also submitted to the Justice Department for preclearance. The Election Commission appealed the order of the chancery court and sought to dissolve the preliminary injunction. This Court dissolved the preliminary injunction finding that the harm to the movant did not outweigh the interest of the public in going forward with the scheduled elections. *Id.* at 832-833.

¶9. In *Sanders,* this Court said:

> This Court recognizes that state courts have concurrent jurisdiction with the federal courts to decide whether § 5 of the Voting Rights Act applies to contemplated changes in election procedures and further recognizes that state courts have the duty to uphold federal law, jurisdiction and duty which we gladly accept. We also understand that state courts may not actually grant pre-clearance. *Hathorn v. Lovorn,* 457 U.S. 255, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1981). *See also* *Greenville School v. Western Line School,* 575 So. 2d 956, 959 (Miss. 1990); *Harrison County v. City of Gulfport,* 557 So. 2d 780, 788 (Miss. 1990). We recognize that a state court clearly has jurisdiction to decide questions of violation of the one person, one vote standard under the 14th amendment of the United States Constitution as well as under Miss. Const. Art. 3, § 14. Pursuant to Miss. Const. Art. 6 § 147, we do not here today decide which state court, chancery or circuit, should decide such questions, except to note that the plaintiff here requested equitable relief.

*Id.* at 831. The Court went on to discuss the four factors to be considered when determining whether to grant injunctive relief, and determined that injunctive relief was not appropriate in that case.

¶10. The City also cites the United States Supreme Court in *Clark v. Roemer,* 500 U.S. 646 (1991), in support of its contention that injunction was a proper remedy in this case. In that case the Supreme Court held that a Louisiana federal district court erred by not enjoining elections for judgeships to which the Attorney General interposed valid objections, and which were not precleared under Section 5. *Clark,* 500 U.S. at 655.

¶11. The trial court based its ruling on this Court's decision in *In re McMillin,* 642 So. 2d 1336 (Miss. 1994). In that case, the plaintiffs sought an injunction against the Mississippi Democratic Party Executive Committee and the Mississippi Republican Party Executive Committee which would prohibit the holding of the judicial primary election. The Hinds County Chancery Court issued a preliminary injunction enjoining both committees from conducting the elections until preclearance of House Bill 1809 by the Department of Justice under Section 5 was obtained. *McMillin,* 642 So. 2d at 1337. In that case, this Court said:

> Chancery courts in this state do not have the jurisdiction to enjoin elections or to otherwise interfere with political and electoral matters which are not within the traditional reach of equity jurisdiction. *Howard v. Sheldon,* 151 Miss. 284, 294, 117 So. 839, 839 (1928); *Goodman v.*

***Rhodes,*** 375 So. 2d 991, 993 (Miss. 1979); *See also* **Barnes v. McLeod,** 165 Miss. 437, 140 So. 740 (1932); **Brumfield v. Brock,** 169 Miss. 784, 142 So. 745 (1932); **Barnes v. Barnett,** 241 Miss. 206, 129 So. 2d 638 (1961); ***Todd v. Smith,*** 331 So. 2d 920 (Miss. 1976). Moreover, the action taken by the Hinds County Chancery Court in enjoining the judicial primaries constitutes a change in voting standards, practices and procedures also subject to § 5 preclearance or approval. *See* **[Dougherty County Board of Education v. White,](#)** [439 U.S. 32, 99 S.Ct. 368, 58 L.Ed.2d 269 (1978)](#). As is the case with H.B. 1809, no such preclearance of the injunction issued by the Hinds County Chancery Court was obtained. Voting changes subject to § 5 "will not be effective as law until and unless cleared." **[Connor v. Waller,](#)** [421 U.S. 656, 656, 95 S.Ct. 2003, 2003, 44 L.Ed.2d 486 (1975)](#). *See also* **[Clark v. Roemer,](#)** [500 U.S. 646, 652, 111 S.Ct. 2096, 2101, 114 L.Ed.2d 691 (1991)](#)(failure to obtain preclearance leaves the proposed change unenforceable).

It follows that the preliminary injunction at issue, even if within the jurisdiction of the chancery court to grant, cannot be enforced without preclearance. Likewise, H.B. 1809 cannot be enforced without preclearance. Consequently, the statutes currently governing primary judicial elections and setting such elections for Tuesday, June 7, 1994, are the only enforceable provisions regarding said primaries.

*Id.* at 1339.

¶12. Both the *Sanders* case and the *McMillin* case are distinguishable from the case *sub judice.* In both those cases, injunction was granted by the lower court because preclearance had not been obtained under Section 5 of the Voting Rights Act of 1965. In the case *sub judice,* the United States Attorney General returned a non-objection letter to the proposed change submitted by the City. The problem in the case *sub judice* is that the new wards were not properly adopted according to state law. Miss. Code Ann. § 21-17-9 (1990). The *Sanders* case implies that where there is a question of violation of the one person one vote constitutional requirement, that state courts have jurisdiction to decide those questions. Furthermore, it does not foreclose the option of an injunction as it goes on to discuss the factors to be considered in granting an injunction.

¶13. This Court has long followed the doctrine of non-judicial interference in the election scheme. See *In re Wilbourn,* 590 So. 2d 1381 (Miss. 1991). However, we have said, "'It [a court] can direct an official or commission to perform its official duty or to perform a ministerial act, but it cannot project itself into the discretionary function of the official or the commission. Stated differently, it can direct action to be taken, but it cannot direct the outcome of the mandated function.'" *In re Wilbourn,* 590 So. 2d at 1385 (quoting **Hinds County Democratic Executive Committee v. Muirhead,** 259 So. 2d 692, 695 (Miss. 1972)). We have also said, "[t]hus, a court could, if necessary, compel by mandamus an election commission or executive committee to perform its statutory duty upon its failure to do so, or prohibit it by way of injunction or writ of prohibition from exceeding its statutory authority in some respect; use of an extraordinary writ, however, cannot be extended to actually telling the commission what action to take." *Id.*

¶14. We hold that the Election Commission had an official duty to see to it that the elections in Grenada were carried out in compliance with state law. As such, the circuit court had the power and jurisdiction to enjoin the elections until the City could amend its Charter in compliance with Miss.

Code Ann. § 21-17-9 (1990). Thereafter the question for the trial court would have been whether injunction was a proper remedy under *Sanders* applying the four factors. Therefore, we reverse and remand the case to the Grenada County Circuit Court for proceedings not inconsistent with this opinion.

**¶15. REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**