962 So.2d 537 (2007)
In re William C. BELL.
No. 2006-M-01895-SCT.
Supreme Court of Mississippi.
March 1, 2007.
*538 William E. Spell, Clinton, attorney for appellant.
EN BANC.
DICKINSON, Justice, for the Court.
¶ 1. Three judicial candidates filed a complaint in the Hinds County Chancery Court claiming that a fourth candidate *539 made a false and misleading statement in violation of both Canon 5 of the Mississippi Code of Judicial Conduct and Section 23-15-977.1 of the Mississippi Election Code. After the chancery court issued a temporary restraining order ("TRO") requiring the defendant to cease making the statement, the defendant filed an emergency appeal to this Court. Finding the plaintiffs' petition failed to state a claim upon which relief could be granted by the chancery court, we vacated the TRO by order entered on November 6, 2006. The purpose of this opinion is to provide this Court's reasoning for dissolving the TRO.

BACKGROUND FACTS AND PROCEEDINGS
¶ 2. William C. Bell was a candidate for Chancery Judge of the Fifth Chancery Court District, Subdistrict 5-1. During the course of his campaign, Bell promised that, if elected, he would dedicate his time to "help clear the backlog of criminal cases in Hinds County."
¶ 3. On Saturday, November 4, 2006  three days prior to the election  three other candidates ("Plaintiffs") for the same position filed a complaint in the Hinds County Chancery Court seeking, inter alia, a TRO. On that same day, the chancellor held a hearing and issued a TRO which temporarily restrained Bell "from making or publicizing further false and misleading claims that if he is elected as a Chancery Judge of the Fifth Chancery Court District, he will help clear the backlog of criminal cases in Hinds County, or any such similar claims."
¶ 4. Immediately thereafter, pursuant to Rule 21 of the Mississippi Rules of Appellate Procedure, Bell filed a petition for an extraordinary writ asking that we dissolve the TRO. A quorum of this Court, sitting en banc, reviewed Bell's petition,[1] an answer filed by the three plaintiffs, and a response filed by Bell. With one justice dissenting, we found the complaint failed to state a claim upon which relief could be granted by the chancery court, and we dissolved the TRO.

DISCUSSION

I.
¶ 5. The restraining order issued against Bell raises serious and substantial constitutional issues, such as prior restraint of the First Amendment right to free speech. There also is some logic to the argument that a system which forces one with aspirations of judicial office to jump into the political arena, raise money, and campaign for votes, and then judicially restrains the candidate from what he or she might say in the course of the campaign exhibits a touch of hypocrisy. But we need not address those concerns today because this case must be decided on a different level.
¶ 6. This case, brought in chancery court against a judicial candidate, alleges the candidate has violated  and is likely to continue to violate  the Mississippi Code of Judicial Conduct. Stated another way, and to be very clear, the cause of action alleged in this matter is the violation of the Mississippi Code of Judicial Conduct, and the remedy sought for that violation is a restraining order, maturing into an injunction. Although restraining orders and injunctions frequently are issued by our chancery courts as remedies for various legal and equitable claims, they are not  and have never been  issued by our trial courts to remedy violations of the Code of Judicial Conduct.
¶ 7. We think it important to state at the outset that those who believe a judicial candidate or a judge has violated (or will *540 violate) the Mississippi Code of Judicial Conduct have another forum in which to seek an appropriate remedy. As we will discuss herein, such claims must be filed with the Judicial Performance Commission in accordance with the Mississippi Constitution. And if the Judicial Performance Commission fails to act, the aggrieved party may seek a writ of mandamus from this Court, ordering the Commission to address the issue. But the aggrieved party is not allowed  and has never been allowed  to pursue as a cause of action such a claim in our state courts.
¶ 8. Article 1, Section 1, of the Mississippi Constitution establishes and empowers Mississippi's three separate branches of government, one of which is the judiciary. Under Article 6, which addresses the distribution of judicial power, the jurisdiction of the chancery court is established:
¶ 9. The chancery court shall have full jurisdiction in the following matters and cases, viz.:
(a) All matters in equity;
(b) Divorce and alimony;
(c) Matters testamentary and of administration;
(d) Minor's business;
(e) Cases of idiocy, lunacy, and persons of unsound mind;
(f) All cases of which the said court had jurisdiction under the laws in force when this Constitution is put in operation.
Miss. Const. art. 6, § 159.
¶ 10. This Court has previously stated that "`[t]he constitution makers of 1890 knew, when they invested the chancery court with full jurisdiction of all matters in equity, (Sec. 159 of Const.) that the supreme court had theretofore held that equity is defined as that system of justice which was administered by the high court of chancery in England. . . .'" Mitchell v. Rawls, 493 So.2d 361, 364 (Miss.1986) (quoting Griffith's Mississippi Chancery Practice § 584 (2d Ed.1950)). Thus, the equitable jurisdiction and power of the chancery court is limited to the system of justice administered by England's high court of chancery.[2]
¶ 11. Based upon this authority, we have searched in vain for citation of authority which suggests that the high court of chancery in England entertained and adjudicated disputes between candidates for public office.[3] Instead, as this Court held in In re McMillin, 642 So.2d 1336, 1339 (Miss.1994), "[c]hancery courts in this state do not have the jurisdiction to enjoin elections or to otherwise interfere with political and electoral matters which are not within the traditional reach of equity *541 jurisdiction." See also Goodman v. Rhodes, 375 So.2d 991, 994 (Miss.1979) (Court dissolved injunction because chancery court had no jurisdiction to determine the candidates whose names should appear on the ballot); Brumfield v. Brock, 169 Miss. 784, 788, 142 So. 745, 746 (1932) ("By a long line of decisions this court has held that courts of equity deal alone with civil and property rights and not with political rights."). Thus, the challenge to Bell's conduct does not fall within the chancery court's equitable jurisdiction.[4]
¶ 12. It is true of course that, in a proper case, restraining orders and injunctions are within the jurisdiction of our chancery courts. See, e.g., S. Bus Lines, Inc. v. Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees, 205 Miss. 354, 374, 38 So.2d 765, 768 (1949) (injunction allowed in chancery to enjoin unlawful conspiracy to commit violence); Miss. Theatres Corp. v. Hattiesburg Local Union No. 615, 174 Miss. 439, 449, 164 So. 887, 890 (1936) (injunction allowed in chancery to restrain breach of contract). But these and other cases require that an application for injunctive relief be predicated upon some legal or equitable claim which will, at some point, proceed to the merits. Indeed, an applicant for injunctive relief must demonstrate, inter alia, a substantial likelihood of prevailing on the merits of the claim. City of Durant v. Humphreys County Mem'l Hosp./Extended Care Facility, 587 So.2d 244, 250 (Miss.1991). No such showing could be made in this case.

II.
¶ 13. The courts which make up our judiciary are not authorized to resolve every claim and dispute that may arise between our citizens. The plaintiff must file a complaint which alleges some cognizable claim or cause of action against the defendant. Absent some colorable claim that a candidate or other defendant committed a tort or violated a statute or constitutional provision, our courts consistently have refused to adjudicate election disputes. For instance, this Court held in 1907 that
[t]here is no provision in the law for the courts to entertain contests between rival candidates of a particular political party, and determine for that party which of the candidates shall be declared its nominee. . . . The only contests that the courts can entertain are those originating under general election laws.
Ramey v. Woodward, 90 Miss. 777, 781, 44 So. 769, 769 (1907). See also Howard v. Sheldon, 151 Miss. 284, 294, 117 So. 839, 839 (1928) (citing Ramey and recognizing that "courts should not assume such jurisdiction").
¶ 14. Our courts do, however, have jurisdiction and constitutional authority to adjudicate election-related claims of violation of a statute or constitutional provision.[5] For instance, in City of Grenada v. Harrelson, 725 So.2d 770, 774 (Miss.1998), this Court found that the circuit court erred in failing to enjoin an election that *542 was based on improper ward lines. The circuit court had found that, based on this Court's decision in McMillin, it did not have the authority to enjoin the election. Id. at 773. In overruling the trial court, this Court stated:
This Court has long followed the doctrine of non-judicial interference in the election scheme. See In re Wilbourn, 590 So.2d 1381 (Miss.1991). However, we have said, "`[A court] can direct an official or commission to perform its official duty or to perform a ministerial act, but it cannot project itself into the discretionary function of the official or the commission. Stated differently, it can direct action to be taken, but it cannot direct the outcome of the mandated function.'" In re Wilbourn, 590 So.2d at 1385 (quoting Hinds County Democratic Executive Committee v. Muirhead, 259 So.2d 692, 695 (Miss.1972)). We have also said, "[t]hus, a court could, if necessary, compel by mandamus an election commission or executive committee to perform its statutory duty upon its failure to do so, or prohibit it by way of injunction or writ of prohibition from exceeding its statutory authority in some respect; use of an extraordinary writ, however, cannot be extended to actually telling the commission what action to take." Id.

Harrelson, 725 So.2d at 773-74. See also Scott v. Stater, 707 So.2d 182, 185 (Miss. 1997) (affirming circuit court's issuance of a restraining order preventing a mayor from suspending a properly appointed judge for violations of the Judicial Code of Conduct; only constitutional avenue of relief was to file a formal complaint with the Judicial Performance Commission).
¶ 15. The complaint filed against Bell in the chancery court alleges that, during the course of the campaign, he made "false and misleading statements" which were "in violation of Canon 5 of the Mississippi Code of Judicial Conduct and . . . Bell's oath taken pursuant to Section 23-15-977.1 of the Mississippi Election Code." It is, of course, within the prerogative of the Legislature to create a civil cause of action for lying while running for public office. However, were it to do so, it is not likely that our courts  at their current operational and budgetary levels  could handle the additional caseload. We do note, though, that the plaintiffs were not without a forum within which to seek a remedy.

III.
¶ 16. According to its Preamble, the Mississippi Code of Judicial Conduct ("Code"), adopted April 2, 2002, establishes "standards of ethical conduct of judges."[6] The Preamble further provides that the Code "is not designed or intended as a basis for civil liability or criminal prosecution."
¶ 17. The Commission on Judicial Performance ("Commission"), established by Article 6, Section 177A of the Mississippi Constitution, receives and investigates certain complaints against judges, including "conduct prejudicial to the administration of justice which brings the judicial office into disrepute." Miss. Const. art. 6, § 177A. Thus, alleged violations of the Canons fall within the Commission's scope and authority. The Commission, however, has no authority to discipline or sanction judges or candidates for judicial office. Instead, the Commission makes recommendations to this Court, which is constitutionally empowered to exercise oversight over the judiciary and ultimately to determine *543 the discipline of judicial officers for violations of the Canons.
¶ 18. In promulgating the Canons, this Court established a Special Committee on Judicial Election Campaign Intervention ("Special Committee") "whose responsibility shall be to issue advisory opinions and to deal expeditiously with allegations of ethical misconduct in campaigns for judicial office." Miss.Code of Judicial Conduct Canon 5(F). Absent legislative enactment imposing criminal or civil liability for violation of the Canons, the circuit and chancery courts have no power to grant relief for such alleged violations. Finding no such statute, we hold that an alleged violation of the Canons is not cognizable as a cause of action before our trial courts, but rather must be pursued through the Commission or the Special Committee.

IV.
¶ 19. The plaintiffs also accuse Bell of violating Section 23-15-977.1 of the Mississippi Code, which requires candidates for judicial office to sign a "pledge under oath and under penalty of perjury." Plaintiffs do not allege that Bell failed to sign the pledge recited in the statute, so we must assume they claim he violated the pledge. The only remedy provided in the statute for offering false information in the pledge or oath is a criminal action for perjury. The statute provides no civil claim or cause of action for the failure of a candidate to fulfill the pledge or oath. Because (as the plaintiffs argued and the chancellor correctly found) the chancery courts do not hear criminal cases, they are powerless to adjudicate a criminal charge of perjury. See Miss. Const. art. 6, § 159.

CONCLUSION
¶ 20. Based upon the authorities and discussion herein, this Court dissolved the temporary restraining order issued by the Hinds County Chancery Court.
¶ 21. TEMPORARY RESTRAINING ORDER VACATED.
WALLER AND COBB, P.JJ., CONCUR. RANDOLPH, J., CONCURS IN RESULT ONLY. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION. SMITH, C.J., EASLEY, CARLSON AND GRAVES, JJ., NOT PARTICIPATING.
DIAZ, Justice, Dissenting.
¶ 22. By refusing to address the merits of this case, the majority fails to recognize that any wrong existed beyond the violation of a judicial canon. Once Respondents sought relief via the Special Committee, and the Committee failed to act as required by Canon 5, the Respondents had a right to seek equitable relief in the chancery court.
¶ 23. First, while the First Amendment certainly protects political speech, States may restrict false and misleading statements provided that the restriction comports with strict scrutiny. See Republican Party of Minn. v. White, 536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (finding that the Minnesota Code of Judicial Conduct's "announce clause," prohibiting candidates for judicial office from announcing her views on a contested issue, violated the First Amendment); Brown v. Hartlage, 456 U.S. 45, 53-54, 102 S.Ct. 1523, 1529, 71 L.Ed.2d 732, 741 (1982) ("When a State seeks to restrict directly the offer of ideas by a candidate to the voters, the First Amendment surely requires that the restriction be demonstrably supported by not only a legitimate state interest, but a compelling one, and that the restriction operate without unnecessarily circumscribing protected expression.").
*544 ¶ 24. Second, the majority incorrectly finds that Respondents were without "some legal or equitable claim which [would], at some point, proceed to the merits." Our Canons require the Special Committee to take action when a judicial candidate is suspected of violating the Code of Judicial Conduct, therefore, Respondents had a claim which should have proceeded on the merits. Miss.Code of Judicial Conduct Canon 5(F)(4) (2006). By issuing the TRO, the chancellor correctly found that there was no adequate remedy at law. Moore v. Sanders, 558 So.2d 1383, 1385 (Miss.1990) (the basis for injunctive relief is inadequacy of a remedy at law).
¶ 25. Third, the majority mischaracterizes the jurisdiction of our chancery courts. The finding that "the equitable jurisdiction and power of the chancery court is limited to the system of justice administered by England's high court of chancery," is a misapprehension of our judicial system. The jurisdiction of our chancery courts is not limited to the definition of equity as it existed in nineteenth century England. There are in fact three sources of our chancery court's subject matter jurisdiction: (1) the Mississippi Constitution; (2) statutory law; and (3) case law. See Bridges & Shelson, Griffith Mississippi Chancery Practice (2000 Ed.) § 24.[7] Fourth, by holding that election matters do not fall within the chancery court's equitable jurisdiction, the majority fails to mention the cases where this Court has found chancery jurisdiction proper. In Adams Cty. Election Comm'n v. Sanders, 586 So.2d 829, 831 (Miss.1991), we held that state courts, including chancery courts, had concurrent jurisdiction with the federal courts to consider whether Section 5 of the Voting Rights Act applied to changes in election procedures. This Court previously had decided Carter v. Luke, 399 So.2d 1356 (Miss.1981) and Lovorn v. Hathorn, 365 So.2d 947 (Miss. 1978), which involved chancery review of similar election matters. Though the cases later were consolidated for review by the Supreme Court in Hathorn v. Lovorn, 457 U.S. 255, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982), they were never reversed for lack of proper jurisdiction. Moreover, ample evidence exists that candidates for judicial election historically have sought equitable relief from our chancery courts in election matters. See Leslie Southwick, The Least of Evils for Judicial Selection, 21 Miss. C.L.Rev. 209, 226-35 (2002) (summarizing the 2000 Supreme Court campaigns where candidates sought injunctive relief in chancery courts to curb United States Chamber of Commerce television advertisement).
¶ 26. Fifth, and contrary to the majority's holding, there is no need for the Legislature to create a civil cause of action for making misrepresentations while running for public office. A chancery court may issue an injunction in the absence of a statutory or constitutional violation, as the absence of a remedy at law is the very nature of equity jurisdiction. Equity is defined by Black's Law Dictionary as "[j]ustice administered according to fairness as contrasted with the strictly formulated rules of common law." Black's Law Dictionary 484 (5th ed.1979). Legislative action is not needed because "there is always jurisdiction in equity to afford relief *545 for all rights withheld or wrongs done or impendingly threatened to be done. If there is no plain, adequate and complete remedy at law, litigants may resort to equity." Griffith § 24(c) (emphasis supplied).
¶ 27. Finally, judicial elections are unique in that both the Legislature and this Court have taken steps to remove them from the political realm. In 1994, the Legislature adopted the Nonpartisan Judicial Election Act, prohibiting judicial candidates from aligning themselves with political parties. Miss.Code Ann. §§ 23-15-974 through XX-XX-XXX (Supp.2006). Eight years later, this Court established the Special Committee on Judicial Election Campaign Intervention to oversee alleged misconduct in judicial campaigns, with this Court having ultimate authority over judicial candidates. Miss.Code of Judicial Conduct Canon 5(F)(4) (2006). The unique nature of judicial elections undermines the majority's reliance on the doctrine of non-judicial interference in political matters.
¶ 28. Since Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), we have rejected the argument that elections were political questions outside the reach of the courts. See, e.g., Boyd v. Tishomingo Cty. Democratic Exec. Comm. & Members, 912 So.2d 124 (Miss.2005) (upholding circuit court's judgment affirming primary election results); Waters v. Gnemi, 907 So.2d 307 (Miss.2005) (circuit court's order authorizing a special election was proper); Barbour v. Gunn, 890 So.2d 843, 846 (Miss.2004) (circuit court had authority to hear election contest); Grist v. Farese, 860 So.2d 1182 (Miss.2003) (affirming circuit court's determination that former chancellor was not qualified to run for district attorney); In re Proposed Initiative Measure No. 20 v. Mahoney, 774 So.2d 397 (Miss.2000) (holding that circuit courts could judge constitutionality of ballot initiatives); City of Grenada v. Harrelson, 725 So.2d 770 (Miss.1998) (circuit court had jurisdiction to enjoin elections that violated statutory requirements).
¶ 29. However, the majority relies on the pre-Baker decisions of Howard v. Sheldon, 151 Miss. 284, 294, 117 So. 839 (1928), and Ramey v. Woodward, 90 Miss. 777, 781, 44 So. 769, 769 (1907), for the proposition that "our courts have consistently refused to adjudicate election disputes." This misstates modern election law by focusing on antiquated interpretations of nonjusticiability. We have clearly moved away from such a position, particularly where judicial elections are concerned.
¶ 30. For the foregoing reasons, the chancery court had jurisdiction to provide an equitable remedy once the Special Committee failed to act.
NOTES
[1] Attached to Bell's petition were the pleadings filed in the chancery court proceeding.
[2] Our analysis of equity jurisdiction may not fairly be read to imply that a chancery court's jurisdiction is limited to equity matters. As our discussion above recognizes, the Mississippi Constitution and numerous statutes detail a variety of non-equity matters over which a chancery court may properly exercise its jurisdiction. However, neither the Mississippi Constitution nor any statute or rule of equity grants to our chancery courts the power to issue an order restraining a judicial candidate from violating the Code of Judicial Conduct.
[3] Similarly, we find no authority which suggests that the chancery courts in Mississippi exercised jurisdiction over election disputes prior to adoption of the Mississippi Constitution in 1890. The Mississippi Supreme Court held in 1874 "that the constitution confers upon the chancery court full jurisdiction of all matters in equity, and equity is defined to be that system of justice which is administered by the high court of chancery in England in the exercise of its extraordinary jurisdiction." Smith v. Everett, 50 Miss. 575, 579 (1874), overruled on other grounds by Bank of Miss. v. Duncan, 52 Miss. 740, 748-49 (1876).
[4] Nor does the challenge relate to divorce and alimony; matters testamentary and of administration; minor's business; or cases of idiocy, lunacy, or persons of unsound mind. See Miss. Const. art. 6, § 159.
[5] We, of course, do not contend that the judiciary must shy away from all matters of a political nature. The Harrelson quote above explains as much. However, as the cases cited by the dissent demonstrate, our courts have noted probable jurisdiction in election cases only to enforce a statutory or constitutional requirement or prohibition. We find no case where this Court has allowed a trial court to take jurisdiction over a violation of the Code of Judicial Conduct. This Court, of course, takes jurisdiction over matters from the Judicial Performance Commission, as provided by the Mississippi Constitution.
[6] Although the Code and its five Canons ordinarily address the conduct of judges, Canon 5 specifically applies to the conduct of "a judge or a candidate for election to judicial office."
[7] In addition to Article 6 Section 159 cited by the majority, the Constitution grants chancery courts jurisdiction over six additional matters. Miss. Const. Art. 6 §§ 160-61. Through roughly 200 statutes, our Legislature has added to the original equity jurisdiction of the chancery court. Griffith § 24a. It has long been understood that "[t]he legislature may add new equity powers to those established by the Constitution." Davis v. Davis, 194 Miss. 343, 346, 12 So.2d 435, 436 (1943).