LAMAR, Justice,
for the Court:
¶ 1. Hattiésburg High School (“HHS”) filed á complaint for injunctive relief against the Mississippi High School Activities Association (“MHSAA”), alleging that its decision to declare one of HHS’s students ineligible to participate in athletics was arbitrary and Capricious. The Forrest County Chancery'Court agreed, and it vacated the penalties that MHSAA had imposed against HHS. MHSAA appealed to this Court. Because we find that HHS failed to state'a legally cognizable claim or causé" óf action, we vacate the decisions of the Forrest County 'Chancery Court.
FACTS AND PROCEDURAL HISTORY
. ¶ 2. Tiaria Griffin was a star basketball player at Lawrence County High School. At the beginning of her senior year, Tiaria and her brother Steven transferred to HHS. After MHSAA declared Tiaria and Steven ineligible to participate in athletics at HHS for the 2011-2012 season, Tiaria, Steven, and their mother filed a complaint for injunctive relief in the Forrest County Chancery Court on September 30, 2011. They alleged, among other things, that MHSAA’s “actions in denying the minor plaintiffs eligibility for competition in athletic activities were arbitrary and capricious,” and that MHSAA “did not have any substantial basis to deny the minor plaintiffs eligibility for athletic activities.”
¶ 3. Also on September 30, 2011, Tiaria, Steven and their mother filed a motion for a temporary restraining order.(TRO), asking the chancellor to enjoin MHSAA from “ruling and removing the minor plaintiffs from participation in competition as eligible student athletes at [HHS], until a full hearing is had on [plaintiffs’] application for a permanent injunction.” On that same day, the chancellor issued the TRO, enjoining MHSAA from “ruling the minor *1210 Plaintiffs ineligible for competition in scholastic sport activities.” The TRO was set to expire after ten' days, unless extended. Also on that same day, MHSÁA filed a notice of removal to the United States District Court for the Southern District of Mississippi.[1]
. ¶4. On October 7, 2011, the chancellor held a,hearing on the TRO and decked that, in spite of the removal to. federal court, the state court proceedings were “frozen,” and the TRO therefore. would remain in effect.[2] The parties subsequently filed several motions in the district court. MHSAA filed a ¡motion to dismiss, arguing that the plaintiffs “seek to appeal the decision rendered by [MHSAA] relative to Minor Plaintiffs’ eligibility to participate in athletics,” and that the Plaintiffs “lack standing to maintain such an. appéal.” HHS filed a motion to intervene as a plaintiff, arguing that it “clearly claims an,interest in. the decision of [MHSAA] in declaring. [Tiaria' and Steven] ineligible and should be represented in the instant action.”
¶5. On, November 22, 2011, the district court entered an order finding that the chancellor “did not have jurisdiction to conduct [the October 7th hearing] or make any ruling regarding the extension of the [TRO] ” and that the chancellor’s actions on that day were “null and void as a matter of law.” The district court further found that the TRO had expired on October 10, 2011. The district court then remanded the case to state court on December 9, 2011, finding that there was no “legitimate assertion of a violation of federal constitutional rights or statutes” in the complaint. The district judge did not rule on MHSAA’s motion to dismiss .or HHS’s motion to intervene before remand.
¶ 6. On December 12, 2011, the chancellor held a hearing to dispose of several matters that were still outstanding following remand. The chancellor granted the plaintiffs’ request for a preliminary injunction against MHSAA. The terms’ of the injunction prohibited MHSAA from suspending the HHS lady basketball team through January 9, 2012. The injunction also prohibited Tiaria from’ participating in basketball games on December 13, 2011, and December 16, 2011, but allowed her to participate in' the remaining games through January 9, 2012. The chancellor set a hearing for January 9, 2012, to determine “why this preliminary injunction should not continue ... pending final de-. termination of the merits [of] this case.”[3]
¶ 7. The chancellor also granted HHS’s motion to intervene, stating that HHS was “granted permission and authority to become a plaintiff’ in the action. Finally, the chancellor partially granted MHSAA’s motion to dismiss—she granted its motion to ■ dismiss as to Steven’s .claims,[4] but she “reserve[d] a ruling” on the dismissal of Tiaria’s claims.
¶ 8. MHSAA filed a petition for an interlocutory appeal from the denial of its motion to dismiss Tiaria and her mother. This Court granted the petition and dismissed their complaint, stating in its order that “the trial court erred in failing to grant MHSAA’s motion to dismiss ... *1211 where the [complaint] ... failed to state a cause of action.” This left HHS as the sole plaintiff. HHS filed its complaint for injunctive relief on January 30, 2012. HHS’s complaint is virtually identical to Tiaria and Steven’s complaint, including the damages alleged (part of which was that Tiaria would not be named to the “Dandy Dozen”). HHS alleged that “MHSAA’s actions in denying the minor Plaintiffs eligibility for competition in athletic activities were arbitrary and capricious,” and that it did “not have any substantial basis to deny thé minor Plaintiffs eligibility for athletic activities.”
¶ 9. The chancellor held a five-day trial on HHS’s complaint in September 2012. She issued a detailed opinion and final judgment, in which she summarized all the trial testimony. Ultimately, she affirmed the issuance of the various preliminary injunctions and vacated the penalties MHSAA had levied against HHS during the litigation.
¶ 10. MHSAA appealed to this Court, arguing that HHS’s complaint was an appeal of its eligibility decision and that it was entitled to an agency-like standard- of review. As • such, MHSAA argued, the chancellor could review her eligibility decision only to determine whether the decision ■ was supported by. substantial evidence, was arbitrary or capricious, was beyond its power to make, or violated some statutory or constitutional right of the affected party. MHSAA argued that the chancellor erroneously had conducted a de novo review.of its.administrative decision and had substituted her judgment in place of its own, in violation of the standard set forth above. HHS responded and argued that it was not appealing MHSAA’s decision, that MHSAA was not a state agency entitled to deference, and that the chancellor’s actions and = ultimate conclusions were correct.
¶ 11. After reviewing the parties’ initial briefs, this Court decided that supplemental briefing was necessary. We directed the parties to address the following, question:
If the Court finds that the Mississippi High School Activities Association is not an administrative body and cannot be treated as- an administrative agency, does the chancery court have jurisdiction over a suit challenging the decision of a private, voluntary association?
¶ 12. After careful consideration, we find this issue dispositive, and we hold that HHS failed to state a legally cognizable claim or cause of action. As such, we vacate the decisions of the Forrest County Chancery Court.[5]
ANALYSIS
I. MHSAA is not a state agency entitled to deference.
¶ 13. MHSAA argued in its initial brief that its “eligibility decisions are entitled to the substantial evidence standard of review given to its member school boards. At the beginning of this case, [MHSAA] filed a motion in limine requesting the chancery court to . adopt this appellate standard and. exclude evidence not considered by [MHSAA].” (Emphasis added.) HHS countered that MHSAA was not a state agency and that the proceeding in chancery court “was not an appeal of a decision following a proper administrative hearing conducted by a legislatively created state agency.” (Emphasis added.) *1212 HHS also argued that the only way it could “get a review of the MHSAA proceedings was to file an independent action against the Association for injunctive or equitable relief.” .
¶ 14. We agree with HHS 'that MHSAA is not a state agency. We also find' that there is no right of appeal from MHSAA’s decisions. Because these issues are so closely intertwined, we discuss them together.
¶ 15. First, simply put, there is no authority — statutory or otherwise — that authorizes an appeal of right from the decisions of a voluntary, private organization. And while it is true that one may pursue an appeal in chancery court when there is no adequate remedy at law, that avenue is available only when appealing a state board or agency decision. See, e.g., Prisock v. Perkins, 735 So.2d 440, 443 (Miss.1999) (“where there is no statutory scheme for appeal from a decision of a state board or agency and the injured party does not have a full, plain, complete and adequate remedy at law, the chancery court has jurisdiction for judicial review of the board or agency decision.”) (Emphasis added.)
¶ 16. We disagree with MHSAA’s argument that it is similar to an administrative agency — specifically, a school board — and is therefore entitled to deferential treatment on appeal. First, school boards were specifically created by the Mississippi Legislature, and their functions are strictly regulated by statutory law. In other words, as HHS argues, state statutory law “provide[s] due process and legal protection for students, parents, employees, staff, the administration and the public transacting business with the school districts.” Such is not true for MHSAA, as it is a “non-profit organization in which membership is voluntary.” Mississippi High Sch. Athletic Activities Assoc. v. Coleman, 631 So.2d 768, 771 n. 1 (Miss.1994).
¶ 17. Secondly, we have found no other case in which this Court has granted an agency-like right of appeal from the decisions of a private organization, along with the deference that accompanies that right. On the contrary, this Court previously has specifically denied agency-like deference to other private, nongovernmental organizations. See Owens Corning v. Mississippi Ins. Guar. Assoc., 947 So.2d 944, 945-46 (Miss.2007) (“MIGA is not a state agency, and therefore its interpretation of the Insurance Guaranty Act is not entitled to deference.... MIGA is not an entity akin to the Mississippi Division of Medicaid or any other administrative agency.”) and Mississippi Windstorm Underwriting Ass’n v. Union Fire Insurance Co., 86 So.3d 216, 222 (Miss.2012) (“Like MIGA, MWUA is not an administrative agency and, thus, is not entitled to deference.”)
¶ 18. Finally, MHSAA places much emphasis on this Court’s decision in Mississippi High School Athletic Activities Association v. Coleman, 631 So.2d 768 (Miss.1994). There, this Court was faced with constitutional challenges to MHSAA’s recruiting rule. Id. at 772-73. The Coleman Court did state that the “power to regulate athletic programs is conferred upon the local school boards by the Mississippi Legislature,” and that the “school boards, in turn, delegated this authority to [MHSAA].” Id. at 774. But this statement was made in the context of determining whether MHSAA’s conduct was “state action” for purposes of the constitutional analysis. Id. Coleman simply does not stand for the proposition that MHSAA should be treated as a state agency. Delegation by the member school boards of their authority to regulate athletes and athletic events simply does not extend so *1213 far as to also “delegate'1 their agency status. ■ -
¶ 19. In short, MHSAA is a private “non-profit organization in which membership is voluntary.” Coleman, 631 So.2d at 771 n. 1. As such, it is not a state board'or administrative agency, and the common-law right of appeal to chancery court is therefore unavailable. The parties have pointed to no authority — and we cannot find any — -that authorizes an appeal of right from the decisions of a voluntary, private organization.
II.HHS did not allege a legally cognizable claim.
¶ 20. We now turn' to the issue contemplated by this Court’s question on supplemental briefing — when may parties challenge the decisions of a private, voluntary organization in chancery court? Stated differently,' does an aggrieved athlete, parent, or' school ever have recourse from an adverse decision made by a' private organization like MHSAA? The answer is simple: yes, if they allege a cognizable legal claim.
¶21. The courts of .this state “are not authorized to resolve every claim and dispute that may arise between our citizens. The plaintiff must file a complaint which alleges some cognizable claim or causé of action against the defendant.” In re Bell, 962 So.2d 537, 541 (Miss.2007) (emphasis added). “And even though Section 159 of the Mississippi Constitution gives chancery courts jurisdiction over ‘[a]ll matters in ec[dity,’ that jurisdiction has limits.” Greater Fairview Missionary Baptist Church v. Hollins, 160 So.3d 223, 229 (Miss.2015) (citing Miss. Const. art. 6, § 159).
¶ 22. “It is true of course that, in a proper case, restraining orders and injunctions are within the jurisdiction of our chancery courts.” In re Bell, 962 So.2d at 541 (emphasis added). “But these and other cases require that an application for injunctive relief be predicated upon some legal or equitable claim which will, at some point, proceed to the merits.” Id. (emphasis added). “Indeed, an applicant for injunctive relief must demonstrate, inter alia, a substantial likelihood of prevailing on the merits of the claim.” Id. (emphasis added).
¶ 23. • The ■ entirety of HHS’s. cause of action as stated in its complaint reads as follows:
10. Despite the minor Plaintiffs having met the necessary residency requirement, MHSAA has wrongfully denied approving them for athletic participation.
11. The Association’s actions and conduct did not follow its own rules and regulations regarding residency determination of the minor Plaintiffs.
12. The MHSAA’s actions in denying the minor Plaintiffs eligibility for competition in athletic activities were arbitrary and capricious.
13. The MHSAA did not have any substantial basis to deny the minor Plaintiffs eligibility for athletic activities.
14. The MHSAA failed to follow its own rules, by-laws, and constitution in that it did not properly investigate and consider the matter as required by said rules, by-laws and constitution.
15. [HHS] has no other adequate remedies at law. or otherwise and that [HHS], will suffer irreparable harm, damage and injury, unless the Defendants’ acts complained of are enjoined. The minor Plaintiffs will not be able to practice or participate in team competition and will not be covered by insurance. T.M.G. will lose her ranking as Mississippi top female student athlete in Girls Basketball for the 2011-2012 Sea- *1214 ■ son, and prohibit her ranking as a Dandy Dozen Student Athlete for the State of Mississippi.
Nowhere in its complaint does HHS allege a breach of contract, a tort, fraud, or any other legally cognizable claim. Contrary to the dissents’ position, there simply is no cause of action for “arbitrariness,” in the absence of a contractual provision or some other legal duty requiring otherwise. For example, MHSAA could decide arbitrarily to paint all of its office doors chartreuse, but unless some contractual provision or other legal duty mandates otherwise, no cause of action arises. As such, HHS’s complaint for injunctive relief was not “predicated upon some legal or equitable claim which will, at some point,-proceed to the merits,” and therefore was not- within the Forrest County Chancery Court’s jurisdiction. In re Bell, 962 So.2d at 541.
¶ 24. Chief Justice Waller argues that we reach a decision that “stands in direct conflict with longstanding precedent recognizing that' a member of a- private, voluntary association may seek relief in court from the association’s arbitrary decision.” Waller Dis. at ¶ 36. First, the “longstanding precedent” cited by Chief Justice Waller is mostly nonbinding decisions from other jurisdictions and from our court of appeals. And although Chief Justice Waller does cite two cases written by this Court, those cases are easily distinguishable.
¶25. In Lowery v. International Brotherhood of Boilermakers, 241 Miss. 458, 130 So.2d 831 (1961), Walter Lowery sued The International Brotherhood of Boilermakers in chancery court, requesting that- the court .reinstate him to his former membership in the union and to award damages for his wrongful suspension. Id. at 832 (emphasis, added). This Court also noted that the chancery court had jurisdiction over the case, because “it was alleged that there were funds or property in the hands of a third party, belonging to the appellee. ” Id. at 834 (emphasis added). Clearly then, L.owery had alleged a breach of contract,[6] as well as a due-process type of argument. It was in -the context of reviewing those claims that this Court acknowledged that it would not interfere with the union’s decisions absent arbitrariness. Id. at 836. In fact, in the sentence immediately following the portion quoted by Chief Justice Waller, this Court said:
The courts will, however, grant relief where property rights axe involved or where there is not a provision for a hearing under the contract,, and will determine whether or not a hearing was contrary to natural justice or was had without proper notice. “When property rights of members of voluntary associations are involved, the courts will lend -assistance for their protection.”
Id. (emphasis added) (citation omitted). In short, the Lowery Court was not simply reviewing the union’s decisions for “arbitrariness,” as intimated by the dissents.
¶ 26, And in Multiple Listing Service of Jackson, Inc. v. Century 21 Cantrell Real Estate, Inc., 390 So.2d 982 (Miss.1980), this Court again faced a due-process argument: “The . authorities are in general agreement that judicial review of disciplinary proceedings of a voluntary association should be *1215 limited to determining only whether the member disciplined received procedural due process as required by the Fourteenth Amendment to the United States Constitution....” Id. at 983. And again, it was in the context of reviewing whether an association . member had been afforded due process during a disciplinary proceeding that this Court quoted Lowery and its “arbitrariness” language. Id. at, 984. There simply was no independent “review for arbitrariness,” contrary to Justice Chief Justice Waller’s assertions. Waller Dis. Op. at ¶ 40.
¶ 27. So a fair and thorough reading of both Loivery and MLS reveals that they do not conflict with our holding today. Neither case holds that this Court has the authority simply to review the decisions of a private, voluntary organization-for. “arbitrariness.” Rather, the plaintiffs in those cases presented legally cognizable causes of action that were brought properly in the trial court and then argued before this Court on appeal.
¶28, Chief Justice Waller also claims that we reach a decision that “conflicts with this Court’s barely six-month-old.decision upholding a student’s standing .to sue the MHSAA for misapplying its rules in an eligibility-decision.” Waller Dis. Op. at ¶36. This accusation is easily dismissed as well. Simply put, the one and “only issue before [this Court in Trail was] whether a high school athlete has standing to.challenge adverse decisions concerning the student’s, eligibility to participate in high school athletics.” Mississippi High Sch. Activities Ass’n, Inc. v. Trail, 163 So.3d 274, 275 (Miss.2015) (emphasis added). So as this Court itself specifically acknowledged, the sole issue before, it in Trail was standing.
¶ 29. This Court held ultimately. in Trail that students had standing as third-party beneficiaries to challenge MHSAA’s eligibility decisions.,. Id. at. 280. As such, this Court acknowledged that a contract exists .between .the member- schools and MHSAA, and that this contract could, be breached. And it was in that context that this Court made the statement relied on so heavily by. the • dissents: “once a school decides to create a sports program and establish eligibility rules, the school — or as in this case, MHSAA — has a duty to follow those rules; and it may be held accountable when it does .not do so.” . Id. at 280; Waller Dis. Op. at ¶ 36; King Dis. Op. at ¶ 79.
¶30. What this Court did not do, though, is make- any findings about what the schools or students had to allege, or what.they had to prove,in order to,proceed in chancery court with .a challenge to MHSAA’s eligibility decisions. No one. raised the issue of whether Trail had stated a legally cognizable .claim, and this Court therefore did not review Trail’s complaint or pass on its sufficiency. But that is the question we face today in this apr peal.
¶ 31. As a final note, both dissents argue strenuously'that HHS asserted a claim for breach of contract. But it is clear from the record that the parties did not proceed below as if a breach-of-contract claim had been pleaded.' And nowhere in the chancellor’s sixty-seven-page ■ order does she analyze a breach-of-contract claim; in fact, the phrase-“breach of contract” is never used. Rather, the chancellor analyzed MHSAA’s actions to determine only if her decision was arbitrary and/or supported by substantial evidence (i.e., the agency-appeal standard), finding: ;
It stands to reason that [if] decisions of school boards (which are administrative bodies) are subject to review, then- the actions of the MHSAA. should be subject to review and their, decisions will not be disturbed “unless said decision appealed *1216 from was unsupported -by substantial evidence; was arbitrary or capricious; was beyond the (association’s) ■ scope of peers; or violated the constitutional or statutory rights' of the aggrieved party ... MHSAA offered plaintiffs no adequate administrative remedies to appeal its agency decisions. When no adequate administrative remedy is available, exhaustion is not required . ■.. The reviewing court is charged to study the record and the legislative facts to which the challenged order points and divine a rational basis upon which the administrator may have acted.
¶32. In sum, We reaffirm the sound principles espoused by this Court in In re Bell. HHS’s complaint for injunctive relief was hot “predicated upon some legal or equitable claim which will, at some point, proceed to the merits,” and it therefore was not within the Forrest County Chancery Court’s jurisdiction. In re Bell, 962 So.2d at 541. And none of this Court’s decisions cited by the dissents conflicts' with our holding today.
CONCLUSION
¶ 33. MHSAA is not a state agency, and there is no right of appeal from its decisions. And in order for a plaintiff’s complaint against MHSAA to be within - the' chancery court’s jurisdiction, it must present some cognizable legal or. equitable claim. HHS’s complaint here did not. We-therefore vacate the decisions of the Forrest County Chancery Court.
¶ 34. VACATED.
DICKINSON, P.J., KITCHENS, • PIERCE AND COLEMAN, JJ., . • CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART A ONLY BY RANDOLPH, P.J.; CHANDLER AND KING, JJ., JOIN IN PART. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH; P.J., AND CHANDLER, J.; WALLER, C.J., JOINS IN PART.

. Tiaria, Steven and their mother also had alleged in their complaint that MIISAA had "deprived the minor plaintiffs of their constitutional’'rights to equal protection of the law.;..’’ ' ■

. Counsel for MHSAA did not attend this hearing because théy were given no notice,

. The chancellor ultimately entered two more extensions of the preliminary injunction, through March 19, 2012.,

. MHSAA’ had changed its decision and deemed Steven eligible to participate since the filing of the complaint.

. We note that MHSAA has been, a party before this Court on very few occasions, and this Court never has addressed the precise question presented today. See MHSAA v. Trail, 163 So.3d 274 (Miss.2015); MHSAA v. Coleman, 631 So.2d 768 (Miss.1994); and MHSAA v. Farris, 501 So.2d 393 (Miss.1987).

. “It is now -a well-settled rule that a Union Constitution is a contract between the members of the union and the association. 'The articles of agreement of a labor union, whether called a constitution, charter, by-laws, or any other name, constitute a contract between the union and its members, as well as a contract between the members of the' union, which the courts will enforce, if not immoral or contrary to public policy or the law of the land.’ ’’ Id. at 834 (citation omitted).