# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-01214-SCT

*MISSISSIPPI HIGH SCHOOL ACTIVITIES*
*ASSOCIATION, INC., GREGG FREEMAN, IN HIS*
*OFFICIAL CAPACITY AND DON HINTON, IN*
*HIS OFFICIAL CAPACITY*

*v.*

*HATTIESBURG HIGH SCHOOL*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/28/2013 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| TRIAL COURT ATTORNEYS: | ROBERT DAVIS |
| | PERCY W. WATSON |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES A. KEITH |
| | HOLMES S. ADAMS |
| | RICHARD JARRED GARNER |
| | BERNARD HESS BOOTH, IV |
| | BENJAMIN BLUE MORGAN |
| ATTORNEYS FOR APPELLEE: | PERCY W. WATSON |
| | NORMAN WILLIAM PAULI, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | VACATED - 10/15/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. Hattiesburg High School ("HHS") filed a complaint for injunctive relief against the

Mississippi High School Activities Association ("MHSAA"), alleging that its decision to

declare one of HHS's students ineligible to participate in athletics was arbitrary and

capricious. The Forrest County Chancery Court agreed, and it vacated the penalties that MHSAA had imposed against HHS. MHSAA appealed to this Court. Because we find that HHS failed to state a legally cognizable claim or cause of action, we vacate the decisions of the Forrest County Chancery Court.

## FACTS AND PROCEDURAL HISTORY

¶2. Tiaria Griffin was a star basketball player at Lawrence County High School. At the beginning of her senior year, Tiaria and her brother Steven transferred to HHS. After MHSAA declared Tiaria and Steven ineligible to participate in athletics at HHS for the 2011-2012 season, Tiaria, Steven, and their mother filed a complaint for injunctive relief in the Forrest County Chancery Court on September 30, 2011. They alleged, among other things, that MHSAA's "actions in denying the minor plaintiffs eligibility for competition in athletic activities were arbitrary and capricious," and that MHSAA "did not have any substantial basis to deny the minor plaintiffs eligibility for athletic activities."

¶3. Also on September 30, 2011, Tiaria, Steven and their mother filed a motion for a temporary restraining order (TRO), asking the chancellor to enjoin MHSAA from "ruling and removing the minor plaintiffs from participation in competition as eligible student athletes at [HHS], until a full hearing is had on [plaintiffs'] application for a permanent injunction." On that same day, the chancellor issued the TRO, enjoining MHSAA from "ruling the minor Plaintiffs ineligible for competition in scholastic sport activities." The TRO was set to expire

2

after ten days, unless extended. Also on that same day, MHSAA filed a notice of removal to the United States District Court for the Southern District of Mississippi.[1]

¶4. On October 7, 2011, the chancellor held a hearing on the TRO and decided that, in spite of the removal to federal court, the state court proceedings were "frozen," and the TRO therefore would remain in effect.[2] The parties subsequently filed several motions in the district court. MHSAA filed a motion to dismiss, arguing that the plaintiffs "seek to appeal the decision rendered by [MHSAA] relative to Minor Plaintiffs' eligibility to participate in athletics," and that the Plaintiffs "lack standing to maintain such an appeal." HHS filed a motion to intervene as a plaintiff, arguing that it "clearly claims an interest in the decision of [MHSAA] in declaring [Tiaria and Steven] ineligible and should be represented in the instant action."

¶5. On November 22, 2011, the district court entered an order finding that the chancellor "did not have jurisdiction to conduct [the October 7th hearing] or make any ruling regarding the extension of the [TRO]" and that the chancellor's actions on that day were "null and void as a matter of law." The district court further found that the TRO had expired on October 10, 2011. The district court then remanded the case to state court on December 9, 2011, finding that there was no "legitimate assertion of a violation of federal constitutional rights or statutes" in the complaint. The district judge did not rule on MHSAA's motion to dismiss or HHS's motion to intervene before remand.

---

[1]Tiaria, Steven and their mother also had alleged in their complaint that MHSAA had "deprived the minor plaintiffs of their constitutional rights to equal protection of the law . . . ."

[2]Counsel for MHSAA did not attend this hearing because they were given no notice.

¶6.     On December 12, 2011, the chancellor held a hearing to dispose of several matters that were still outstanding following remand. The chancellor granted the plaintiffs' request for a preliminary injunction against MHSAA. The terms of the injunction prohibited MHSAA from suspending the HHS lady basketball team through January 9, 2012. The injunction also prohibited Tiaria from participating in basketball games on December 13, 2011, and December 16, 2011, but allowed her to participate in the remaining games through January 9, 2012. The chancellor set a hearing for January 9, 2012, to determine "why this preliminary injunction should not continue . . . pending final determination of the merits [of] this case."[3]

¶7.     The chancellor also granted HHS's motion to intervene, stating that HHS was "granted permission and authority to become a plaintiff" in the action. Finally, the chancellor partially granted MHSAA's motion to dismiss—she granted its motion to dismiss as to Steven's claims,[4] but she "reserve[d] a ruling" on the dismissal of Tiaria's claims.

¶8.     MHSAA filed a petition for an interlocutory appeal from the denial of its motion to dismiss Tiaria and her mother. This Court granted the petition and dismissed their complaint, stating in its order that "the trial court erred in failing to grant MHSAA's motion to dismiss . . . where the [complaint] . . . failed to state a cause of action." This left HHS as the sole plaintiff. HHS filed its complaint for injunctive relief on January 30, 2012. HHS's complaint is virtually identical to Tiaria and Steven's complaint, including the damages

---

[3]The chancellor ultimately entered two more extensions of the preliminary injunction, through March 19, 2012.

[4]MHSAA had changed its decision and deemed Steven eligible to participate since the filing of the complaint.

4

alleged (part of which was that Tiaria would not be named to the "Dandy Dozen"). HHS alleged that "MHSAA's actions in denying the minor Plaintiffs eligibility for competition in athletic activities were arbitrary and capricious," and that it did "not have any substantial basis to deny the minor Plaintiffs eligibility for athletic activities."

¶9. The chancellor held a five-day trial on HHS's complaint in September 2012. She issued a detailed opinion and final judgment, in which she summarized all the trial testimony. Ultimately, she affirmed the issuance of the various preliminary injunctions and vacated the penalties MHSAA had levied against HHS during the litigation.

¶10. MHSAA appealed to this Court, arguing that HHS's complaint was an appeal of its eligibility decision and that it was entitled to an agency-like standard of review. As such, MHSAA argued, the chancellor could review her eligibility decision only to determine whether the decision was supported by substantial evidence, was arbitrary or capricious, was beyond its power to make, or violated some statutory or constitutional right of the affected party. MHSAA argued that the chancellor erroneously had conducted a de novo review of its administrative decision and had substituted her judgment in place of its own, in violation of the standard set forth above. HHS responded and argued that it was *not* appealing MHSAA's decision, that MHSAA was *not* a state agency entitled to deference, and that the chancellor's actions and ultimate conclusions were correct.

¶11. After reviewing the parties' initial briefs, this Court decided that supplemental briefing was necessary. We directed the parties to address the following question:

> If the Court finds that the Mississippi High School Activities Association is
> not an administrative body and cannot be treated as an administrative agency,

does the chancery court have jurisdiction over a suit challenging the decision of a private, voluntary association?

¶12. After careful consideration, we find this issue dispositive, and we hold that HHS failed to state a legally cognizable claim or cause of action. As such, we vacate the decisions of the Forrest County Chancery Court.[5]

## ANALYSIS

### I. MHSAA is not a state agency entitled to deference.

¶13. MHSAA argued in its initial brief that its "eligibility decisions are entitled to the substantial evidence standard of review given to its member school boards. At the beginning of this case, [MHSAA] filed a motion in limine requesting the chancery court to *adopt this appellate standard* and exclude evidence not considered by [MHSAA]." (Emphasis added.) HHS countered that MHSAA was not a state agency and that the proceeding in chancery court "*was not an appeal of a decision* following a proper administrative hearing conducted by a legislatively created state agency." (Emphasis added.) HHS also argued that the only way it could "get a review of the MHSAA proceedings was to file an independent action against the Association for injunctive or equitable relief."

¶14. We agree with HHS that MHSAA is not a state agency. We also find that there is no right of appeal from MHSAA's decisions. Because these issues are so closely intertwined, we discuss them together.

---

[5]We note that MHSAA has been a party before this Court on very few occasions, and this Court never has addressed the precise question presented today. *See MHSAA v. Trail*, 163 So. 3d 274 (Miss. 2015); *MHSAA v. Coleman*, 631 So. 2d 768 (Miss. 1994); and *MHSAA v. Farris*, 501 So. 2d 393 (Miss. 1987).

¶15.   First, simply put, there is no authority—statutory or otherwise—that authorizes an appeal of right from the decisions of a voluntary, private organization.  And while it is true that one may pursue an appeal in chancery court when there is no adequate remedy at law, that avenue is available only when appealing a *state board or agency* decision.  *See, e.g.*, ***Prisock v. Perkins***, 735 So. 2d 440, 443 (Miss. 1999) ("where there is no statutory scheme for appeal from a decision of *a state board or agency* and the injured party does not have a full, plain, complete and adequate remedy at law, the chancery court has jurisdiction for judicial review of the board or agency decision.") (Emphasis added.)

¶16.   We disagree with MHSAA's argument that it is similar to an administrative agency—specifically, a school board—and is therefore entitled to deferential treatment on appeal.  First, school boards were specifically created by the Mississippi Legislature, and their functions are strictly regulated by statutory law.  In other words, as HHS argues, state statutory law "provide[s] due process and legal protection for students, parents, employees, staff, the administration and the public transacting business with the school districts."  Such is not true for MHSAA, as it is a "non-profit organization in which membership is voluntary."  ***Mississippi High Sch. Athletic Activities Assoc. v. Coleman***, 631 So. 2d 768, 771 n.1 (Miss. 1994).

¶17.   Secondly, we have found no other case in which this Court has granted an agency-like right of appeal from the decisions of a private organization, along with the deference that accompanies that right.  On the contrary, this Court previously has specifically *denied* agency-like deference to other private, nongovernmental organizations.  *See **Owens Corning v. Mississippi Ins. Guar. Assoc.***, 947 So. 2d 944, 945-46 (Miss. 2007) ("MIGA is not a state

7

agency, and therefore its interpretation of the Insurance Guaranty Act is not entitled to deference . . . . MIGA is not an entity akin to the Mississippi Division of Medicaid or any other administrative agency.") and *Mississippi Windstorm Underwriting Ass'n v. Union Fire Insurance Co.*, 86 So. 3d 216, 222 (Miss. 2012) ("Like MIGA, MWUA is not an administrative agency and, thus, is not entitled to deference.")

¶18.     Finally, MHSAA places much emphasis on this Court's decision in *Mississippi High School Athletic Activities Association v. Coleman*, 631 So. 2d 768 (Miss. 1994). There, this Court was faced with constitutional challenges to MHSAA's recruiting rule. *Id.* at 772-73. The *Coleman* Court did state that the "power to regulate athletic programs is conferred upon the local school boards by the Mississippi Legislature," and that the "school boards, in turn, delegated this authority to [MHSAA]." *Id.* at 774. But this statement was made in the context of determining whether MHSAA's conduct was "state action" for purposes of the constitutional analysis. *Id. Coleman* simply does not stand for the proposition that MHSAA should be treated as a state agency. Delegation by the member school boards of their authority to regulate athletes and athletic events simply does not extend so far as to also "delegate" their agency status.

¶19.     In short, MHSAA is a private "non-profit organization in which membership is voluntary." *Coleman*, 631 So. 2d at 771 n.1. As such, it is not a state board or administrative agency, and the common-law right of appeal to chancery court is therefore unavailable. The parties have pointed to no authority—and we cannot find any—that authorizes an appeal of right from the decisions of a voluntary, private organization.

## II.     HHS did not allege a legally cognizable claim.

8

¶20. We now turn to the issue contemplated by this Court's question on supplemental briefing—when may parties challenge the decisions of a private, voluntary organization in chancery court? Stated differently, does an aggrieved athlete, parent, or school ever have recourse from an adverse decision made by a private organization like MHSAA? The answer is simple: yes, if they allege a cognizable legal claim.

¶21. The courts of this state "are not authorized to resolve every claim and dispute that may arise between our citizens. The plaintiff must file a complaint which alleges some *cognizable claim or cause of action* against the defendant." ***In Re Bell***, 962 So. 2d 537, 541 (Miss. 2007) (emphasis added). "And even though Section 159 of the Mississippi Constitution gives chancery courts jurisdiction over '[a]ll matters in equity,' that jurisdiction has limits." ***Greater Fairview Missionary Baptist Church v. Hollins***, 160 So. 3d 223, 229 (Miss. 2015) (citing Miss. Const. art. 6, § 159).

¶22. "It is true of course that, *in a proper case*, restraining orders and injunctions are within the jurisdiction of our chancery courts." ***In Re Bell***, 962 So. 2d at 541 (emphasis added). "But these and other cases *require that an application for injunctive relief be predicated upon some legal or equitable claim which will, at some point, proceed to the merits*." ***Id.*** (emphasis added). "Indeed, an applicant for injunctive relief *must demonstrate*, inter alia, a *substantial likelihood of prevailing on the merits of the claim*." ***Id.*** (emphasis added).

¶23. The entirety of HHS's cause of action as stated in its complaint reads as follows:

> 10. Despite the minor Plaintiffs having met the necessary residency requirement, MHSAA has wrongfully denied approving them for athletic participation.

11. The Association's actions and conduct did not follow its own rules and regulations regarding residency determination of the minor Plaintiffs.

12. The MHSAA's actions in denying the minor Plaintiffs eligibility for competition in athletic activities were arbitrary and capricious.

13. The MHSAA did not have any substantial basis to deny the minor Plaintiffs eligibility for athletic activities.

14. The MHSAA failed to follow its own rules, by-laws, and constitution in that it did not properly investigate and consider the matter as required by said rules, by-laws and constitution.

15. [HHS] has no other adequate remedies at law or otherwise and that [HHS] will suffer irreparable harm, damage and injury, unless the Defendants' acts complained of are enjoined. The minor Plaintiffs will not be able to practice or participate in team competition and will not be covered by insurance. T.M.G. will lose her ranking as Mississippi top female student athlete in Girls Basketball for the 2011-2012 Season, and prohibit her ranking as a Dandy Dozen Student Athlete for the State of Mississippi.

Nowhere in its complaint does HHS allege a breach of contract, a tort, fraud, or any other legally cognizable claim. Contrary to the dissents' position, there simply is no cause of action for "arbitrariness," in the absence of a contractual provision or some other legal duty requiring otherwise. For example, MHSAA could decide arbitrarily to paint all of its office doors chartreuse, but unless some contractual provision or other legal duty mandates otherwise, no cause of action arises. As such, HHS's complaint for injunctive relief was not "predicated upon some legal or equitable claim which will, at some point, proceed to the merits," and therefore was not within the Forrest County Chancery Court's jurisdiction. *In Re Bell*, 962 So. 2d at 541.

¶24. Chief Justice Waller argues that we reach a decision that "stands in direct conflict with longstanding precedent recognizing that a member of a private, voluntary association may

10

seek relief in court from the association's arbitrary decision." Waller Dis. at ¶36. First, the "longstanding precedent" cited by Chief Justice Waller is mostly nonbinding decisions from other jurisdictions and from our court of appeals. And although Chief Justice Waller does cite two cases written by this Court, those cases are easily distinguishable.

¶25. In *Lowery v. International Brotherhood of Boilermakers*, 130 So. 2d 831 (Miss. 1961), Walter Lowery sued The International Brotherhood of Boilermakers in chancery court, requesting that the court *reinstate him to his former membership in the union and to award damages for his wrongful suspension*. *Id.* at 832 (emphasis added). This Court also noted that the chancery court had jurisdiction over the case, because "it was alleged that *there were funds or property in the hands of a third party belonging to the appellee*." *Id.* at 834 (emphasis added). Clearly then, Lowery had alleged a breach of contract,[6] as well as a due-process type of argument. It was in the context of reviewing those claims that this Court acknowledged that it would not interfere with the union's decisions absent arbitrariness. *Id.* at 836. In fact, in the sentence immediately following the portion quoted by Chief Justice Waller, this Court said:

> The courts will, however, grant relief *where property rights are involved or where there is not a provision for a hearing under the contract*, and will determine whether or not a hearing was contrary to natural justice or was had without proper notice. "When property rights of members of voluntary associations are involved, the courts will lend assistance for their protection."

---

[6]"It is now a well-settled rule that a Union Constitution is a contract between the members of the union and the association. 'The articles of agreement of a labor union, whether called a constitution, charter, by-laws, or any other name, constitute a contract between the union and its members, as well as a contract between the members of the union, which the courts will enforce, if not immoral or contrary to public policy or the law of the land.'" *Id.* at 834 (citation omitted).

11

*Id.* (emphasis added) (citation omitted). In short, the *Lowery* Court was *not* simply reviewing the union's decisions for "arbitrariness," as intimated by the dissents.

¶26. And in *Multiple Listing Service of Jackson, Inc. v. Century 21 Cantrell Real Estate, Inc.*, 390 So. 2d 982 (Miss. 1980), this Court again faced a due-process argument: "The authorities are in general agreement that judicial review of disciplinary proceedings of a voluntary association should be limited to determining only whether the member disciplined received procedural due process as required by the Fourteenth Amendment to the United States Constitution . . . ." *Id.* at 983. And again, it was in the context of reviewing whether an association member had been afforded due process during a disciplinary proceeding that this Court quoted *Lowery* and its "arbitrariness" language. *Id.* at 984. There simply was no independent "review for arbitrariness," contrary to Justice Chief Justice Waller's assertions. Waller Dis. Op. at ¶40.

¶27. So a fair and thorough reading of both *Lowery* and *MLS* reveals that they do not conflict with our holding today. Neither case holds that this Court has the authority simply to review the decisions of a private, voluntary organization for "arbitrariness." Rather, the plaintiffs in those cases presented legally cognizable causes of action that were brought properly in the trial court and then argued before this Court on appeal.

¶28. Chief Justice Waller also claims that we reach a decision that "conflicts with this Court's barely six-month-old decision upholding a student's standing to sue the MHSAA for misapplying its rules in an eligibility decision." Waller Dis. Op. at ¶ 36. This accusation is easily dismissed as well. Simply put, the one and "only issue before [this Court in *Trail* was]

12

whether a high school athlete *has standing* to challenge adverse decisions concerning the student's eligibility to participate in high school athletics." ***Mississippi High Sch. Activities Ass'n, Inc. v. Trail***, 163 So. 3d 274, 275 (Miss. 2015) (emphasis added). So as this Court itself specifically acknowledged, the sole issue before it in ***Trail*** was standing.

¶29. This Court held ultimately in ***Trail*** that students had standing as third-party beneficiaries to challenge MHSAA's eligibility decisions. ***Id.*** at 280. As such, this Court acknowledged that a contract exists between the member schools and MHSAA, and that this contract could be breached. And it was in that context that this Court made the statement relied on so heavily by the dissents: "once a school decides to create a sports program and establish eligibility rules, the school—or as in this case, MHSAA—has a duty to follow those rules; and it may be held accountable when it does not do so." ***Id.*** at 280; Waller Dis. Op. at ¶36; King Dis. Op. at ¶79.

¶30. What this Court did not do, though, is make any findings about what the schools or students had to allege, or what they had to prove in order to proceed in chancery court with a challenge to MHSAA's eligibility decisions. No one raised the issue of whether Trail had stated a legally cognizable claim, and this Court therefore did not review Trail's complaint or pass on its sufficiency. But that is the question we face today in this appeal.

¶31. As a final note, both dissents argue strenuously that HHS asserted a claim for breach of contract. But it is clear from the record that the parties did not proceed below as if a breach-of-contract claim had been pleaded. And nowhere in the chancellor's sixty-seven-page order does she analyze a breach-of-contract claim; in fact, the phrase "breach of

13

contract" is never used. Rather, the chancellor analyzed MHSAA's actions to determine only if her decision was arbitrary and/or supported by substantial evidence (i.e., the agency-appeal standard), finding:

> It stands to reason that [if] decisions of school boards (which are administrative bodies) are subject to review, then the actions of the MHSAA should be subject to review and their decisions will not be disturbed "unless said decision appealed from was unsupported by substantial evidence; was arbitrary or capricious; was beyond the (association's) scope of peers; or violated the constitutional or statutory rights of the aggrieved party . . . MHSAA offered plaintiffs no adequate administrative remedies to appeal its agency decisions. When no adequate administrative remedy is available, exhaustion is not required . . . The reviewing court is charged to study the record and the legislative facts to which the challenged order points and divine a rational basis upon which the administrator may have acted.

¶32. In sum, we reaffirm the sound principles espoused by this Court in *In Re Bell*. HHS's complaint for injunctive relief was not "predicated upon some legal or equitable claim which will, at some point, proceed to the merits," and it therefore was not within the Forrest County Chancery Court's jurisdiction. *In Re Bell*, 962 So. 2d at 541. And none of this Court's decisions cited by the dissents conflicts with our holding today.

## CONCLUSION

¶33. MHSAA is not a state agency, and there is no right of appeal from its decisions. And in order for a plaintiff's complaint against MHSAA to be within the chancery court's jurisdiction, it must present some cognizable legal or equitable claim. HHS's complaint here did not. We therefore vacate the decisions of the Forrest County Chancery Court.

¶34. **VACATED.**

**DICKINSON, P.J., KITCHENS, PIERCE AND COLEMAN, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART A ONLY BY RANDOLPH, P.J.; CHANDLER AND KING, JJ., JOIN IN**

14

**PART. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND CHANDLER, J.; WALLER, C.J., JOINS IN PART.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶35.    I cannot agree with today's holding that the Hattiesburg High School failed to state a claim against the activities association with which it contracted to manage its students' participation in extracurricular activities. The majority admits that a member of a private, voluntary association such as the Mississippi High School Activities Association (MHSAA) may seek injunctive relief against the association but holds that courts cannot grant relief from an arbitrary decision. The majority concludes that "[t]here simply is no cause of action for 'arbitrariness.'"

¶36.    Today's decision stands in direct conflict with longstanding precedent recognizing that a member of a private, voluntary association may seek relief in court from the association's arbitrary decision. It also conflicts with this Court's barely six-month-old decision upholding a student's standing to sue the MHSAA for misapplying its rules in an eligibility decision. In *Mississippi High School Activities Association, Inc. v. R.T. ex rel. Trail*, 163 So. 3d 274, 275 (Miss. 2015), a student was aggrieved by having been declared ineligible due to the MHSAA's alleged misapplication of its rules governing residency requirements. In words that directly contravene this Court's holding today, we stated that "once a school decides to create a sports program and establish eligibility rules, the school—or as in this case, MHSAA—has a duty to follow those rules; and it may be held accountable when it does not do so." *Id.* at 280 (emphasis added). With respect, I cannot join the majority's abrupt and inexplicable departure from precedent.

15

*A. Cause of Action*

¶37.     Many courts have considered the legal status of private, voluntary associations. Contract law governs the relationship between an association and its members. ***Cunningham v. Indep. Soap & Chem. Workers***, 486 P.2d 1316, 1320 (1971). "The constitution and bylaws of a voluntary unincorporated association, provided they are not unreasonable, nor contrary to public policy nor to constitutional or statutory requirements, constitute a valid enforceable contract between the members and the association and govern their mutual rights and liabilities." ***Libby v. Perry***, 311 A.2d 527, 532 (Me. 1973). When a person becomes a member of a private, voluntary association, the person "impliedly agrees to be bound by, and becomes a party to, such contract, and his rights and duties are measured by the terms of such constitution and bylaws." ***Id.*** This Court has echoed these precepts, stating that:

> "Clubs and societies, whether religious, literary, or social, have the right to make their own rules upon the subject of the admission or exclusion of members, and these rules may be considered as articles of agreement to which all who become members are parties. Accordingly, an association has the right to prescribe the rules and regulations defining the qualifications of members, and may impose such terms and conditions upon membership, not contrary to law, as it may choose; members must comply with those terms and conditions in order to be entitled to the benefits of membership. Such conditions apply as well to existing as to prospective members.
>
> . . .
>
> "It is generally held that by becoming a member of a voluntary association, one engages to be bound by its rules, subjects himself to its discipline, and assumes, of necessity, such obligations as are incident to membership, as, for example, the obligation to pay the dues and assessments prescribed by the dues and assessments necessary to defray expenses."

***Lowery v. Int'l Bhd. of Boilermakers***, 241 Miss. 458, 472, 130 So. 2d 831, 836 (Miss. 1961) (citations omitted).

16

¶38. It is equally well-established that an aggrieved member of a private, voluntary association may sue for relief from an arbitrary decision. *Finn v. Beverly Country Club*, 683 N.E.2d 1191, 1193 (1997) (private, voluntary associations' "conduct is subject to judicial review only when they fail to exercise power consistently with their own internal rules . . . [g]enerally, a court will not interfere with the internal affairs of voluntary associations absent mistake, fraud, collusion or arbitrariness"); *Jones v. Nat'l Collegiate Athletic Ass'n*, 679 So. 2d 381, 382 (La. 1996) (stating that "[c]ourts should not interfere with the internal affairs of a private association except . . . when the . . . proceedings have not been conducted fairly and honestly, or . . . cases of fraud, lack of jurisdiction, the invasion of property or pecuniary rights, or when the action complained of is capricious, arbitrary, or unjustly discriminatory"); *Nat'l Ass'n for the Advancement of Colored People v. Golding*, 679 A.2d 554, 561 (Md. 1996) (stating that "if an organization acts inconsistently with its own rules, its action may be sufficiently arbitrary to invite judicial review"); *Cal. Dental Ass'n v. Am. Dental Ass'n*, 590 P.2d 401, 405-06 (Cal. 1979) (stating that "courts will nevertheless accept jurisdiction over private voluntary organizations when the aggrieved party can demonstrate 'an abuse of discretion, and a clear, unreasonable and arbitrary invasion of (its) private rights'"); *Pinsker v. Pac. Coast Soc'y of Orthodontists*, 526 P.2d 253, 263 (Cal. 1974) (application to association could not be denied arbitrarily).

¶39. This rule applies with equal force to high school activities associations. *Robinson v. Kan. State High Sch. Activities Ass'n*, 917 P.2d 836, 840 (1996). And this rule has been adopted in Mississippi. *Lowery v. Int'l Bhd. of Boilermakers*, 241 Miss. 458, 473, 130 So. 2d 831, 836 (1961). *Lowery* was a suit in chancery court brought by a local union member

17

seeking reinstatement. *Id.* at 462, 130 So. 2d at 832. The Court cited the rule that a union constitution is a contract between the union members and the association. *Id.* at 459, 130 So. 2d at 834. This Court held that the actions of a private, voluntary association are subject to judicial review, providing this version of the familiar standard:

> The authorities seem to hold fairly uniformly that the courts will not intervene except for fraud perpetrated upon a member, or lack of jurisdiction. "It is well established that courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud or lack of jurisdiction . . . . *The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion, or **arbitrariness**, be accepted by the courts as conclusive.* Moreover, it is held that the courts will not undertake to inquire into the regularity of the procedure adopted and pursued by such tribunals in reaching their conclusions."

*Id.* at 473, 130 So. 2d at 836 (emphasis added) (citations omitted).

¶40. This Court also reviewed claims of arbitrariness in *Multiple Listing Service of Jackson, Inc. v. Century 21 Cantrell Real Estate, Inc.*, 390 So. 2d 982 (Miss. 1980). There, two affiliated organizations, the Board of Realtors and the Multiple Listing Service of Jackson (MLS), sanctioned a real estate agent and imposed a reprimand and six months' probation, a thirty-day suspension, and a fine of $300. *Id.* at 983. The Court found that the Board/MLS was a private, voluntary association and that its actions were subject to judicial review for arbitrariness. *Id.* at 984. The Court held that the sanction of the reprimand and probation was not properly before the Court because Cantrell had not exhausted the administrative remedies provided by the Board. *Id.* at 983. The Court held that the Board's decision regarding the thirty-day suspension comported with all of its rules and regulations and that Cantrell was afforded due process. *Id.* at 984. Therefore, the Court held that the thirty-day suspension was not arbitrary and capricious. *Id.* But the Court held that the $300

18

fine imposed by MLS was arbitrary because the MLS had no schedule of maximum fines that could be imposed to which each member had agreed. *Id.* at 985.

¶41.    The Court of Appeals applied this precedent in *Morf v. North Central Mississippi Board of Realtors, Inc.*, 27 So. 3d 1188 (Miss. 2010). The Morfs inadvertently had listed two properties in the Multiple Listing Service without the owners' permission, and the Board charged the Morfs with violating its rules. *Id.* at 1190. Applying the standard of review from *Century 21*, the Court of Appeals reviewed the Board's actions to determine whether they were arbitrary. *Id.* at 1191. The Court of Appeals found that the Board had acted arbitrarily because it had failed to follow its own rules in punishing the Morfs. *Id.* The Court of Appeals held that the Board had not followed applicable disciplinary guidelines, and that the penalties were not commensurate with those the Board had imposed on other violators. *Id.* at 1198.

¶42.    These cases plainly establish that, in Mississippi, as in other jurisdictions, relief may be sought in court from arbitrary action by a private, voluntary association. Our decision in *Mississippi High School Activities Association, Inc. v. R.T. ex rel. Trail*, 163 So. 3d 274 (Miss. 2015), was consistent with this precedent. In *Trail*, this Court held that, although schools, not students, are members of the MHSAA, students are third-party beneficiaries of the MHSAA's rules and regulations governing eligibility. *Id.* at 278. Like Tiaria Griffin, R.T. was a star high school athlete. *Id.* at 276. R.T. moved to Mississippi from Arkansas and enrolled in Olive Branch High School, and the MHSAA declared him eligible to participate in athletics. *Id.* But the MHSAA conditioned R.T.'s continuing eligibility upon his sister also enrolling in the school district the next year. *Id.* R.T.'s sister did not enroll because she elected to stay with her mother in Arkansas, while R.T. lived with his father in Mississippi.

19

*Id.* The MHSAA determined under its rules that R.T. had not made a bona fide move to the school district, and he was ineligible to participate in athletics. *Id.* When Olive Branch High School declined to pursue relief, R.T., through his father and next friend, sought a temporary restraining order and preliminary injunction in chancery court. *Id.* The MHSAA moved to dismiss for lack of standing because R.T. was not a third-party beneficiary to the agreement between the high school and the MHSAA. *Id.*

¶43. This Court found that the Trails had standing because R.T. was a third-party beneficiary of the contract between the high school and the MHSAA under the three-part *Sideboard* test. *Id.* at 278 (citing *Yazoo & M.V.R. Co. v. Sideboard*, 161 Miss. 4, 133 So. 669, 671 (1931)). First, we found that the terms of the contract were broad enough to include students because students are mentioned by name in the eligibility rules. *Trail*, 163 So. 3d at 278. Second, we held that student athletes "are within the intent of MHSAA's eligibility rules and within the benefits of those rules." *Id.* And third, we held that the MHSAA's eligibility rules created a substantial and articulate interest in student welfare. *Id.* This Court stated that "[a]ll of MHSAA's eligibility rules are intended to benefit the student athletes, and student athletes have standing to challenge adverse eligibility determinations." *Id.* at 279.

¶44. We explicitly recognized in *Trail* that a student is a third-party beneficiary of the eligibility provisions of the membership contract between a school and the MHSAA. *Id.* at 280. Now, despite *Trail*'s proclamation that students have standing to challenge the MHSAA's eligibility decisions, this Court holds that a high school in contractual privity with the MHSAA cannot seek relief from an eligibility decision. The Court so holds by reasoning that HHS's complaint alleging the MHSAA did not follow its own rules and acted arbitrarily

20

and capriciously fails to state a claim. But HHS's claims that the MHSAA did not follow its own rules and acted arbitrarily and capriciously are precisely the kind of claims that have been recognized as justiciable by this Court and other courts across the nation. HHS contracted with the MHSAA for it to determine student eligibility to participate in extracurricular activities and to do so in a manner free from arbitrariness. By pleading that the MHSAA had applied its rules arbitrarily, HHS adequately pleaded a breach of this agreement. Under our caselaw, it is clear that no further allegations were necessary. Contrary to the majority's position, HHS's allegation that the MHSAA had failed to follow its own rules and had applied them arbitrarily in its eligibility determination is a claim for breach of contract. It is a claim that the MHSAA breached its rules and bylaws, which both HHS and the MHSAA agreed to follow. The complaint did not need to include the magic words "breach of contract" to fulfill basic pleading requirements.

*B. Standard of Review*

¶45. I next address the precise standard of review which should be applied to the decisions of the MHSAA, considering the unique role of the MHSAA in our state education system. The MHSAA's member schools agree to be bound by the rules and regulations in the MHSAA's handbook. *Trail*, 163 So. 2d at 275. Although the MHSAA is a private, voluntary association, it is uniquely situated due to its substantial entwinement with government. By statute, the local school boards are empowered to regulate athletic programs. Miss. Code Ann. § 37-7-301(q) (Rev. 2013). But the school boards have delegated their statutory authority to regulate athletics to the MHSAA. *Miss. High Sch. Activities Ass'n. v. Coleman*, 631 So. 2d 768, 774 (Miss. 1994). And because the MHSAA's authority is derived from

21

statutory authority, its actions are "state action for the purpose of constitutional analysis." *Id.*;

*see also* **Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n**, 531 U.S. 288, 291, 298,

121 S. Ct. 924, 148 L. Ed. 2d 807 (2001) (holding that regulatory enforcement by a high-

school athletic association was state action for the purposes of the Fourteenth Amendment

due to the pervasive entwinement between the athletic association and public schools and

officials). In *Trail*, we recognized that, because student athletes are the intended beneficiaries

of the MHSAA's eligibility requirements, student athletes have standing to bring suit to

challenge an adverse eligibility decision. *Trail*, 163 So. 3d at 278.

¶46.    The case of ***National Collegiate Athletic Association v. Gillard***, 352 So. 2d 1072

(Miss. 1977), dealt with an eligibility decision of the National Collegiate Athletic

Association (NCAA), another private, voluntary organization that regulates collegiate

athletics. Like the MHSAA, the NCAA promulgates and enforces rules and regulations

governing athletics at hundreds of member schools. *Id.* at 1073. *Gillard* overturned an

injunction granted by a chancellor against a ruling by the NCAA that a student was ineligible

to play football at Mississippi State University. *Id.* at 1083. This Court rejected the student's

due-process claim that he had been deprived of a property right because participating in

interscholastic athletics is a privilege that is not afforded due-process protection.[7] *Id.* at 1081.

---

[7] Since *Gillard*, it has been settled that the actions of the NCAA are not state action for the purposes of the Fourteenth Amendment. ***Nat'l Collegiate Athletic Ass'n v. Tarkanian***, 488 U.S. 179, 109 S. Ct. 454, 102 L. Ed. 2d 469 (1988). In *Coleman*, this Court explained that *Tarkanian*'s reasoning did not apply to the MHSAA because, there, "[t]he University had not delegated governmental powers to the NCAA., while in the case *sub judice,* the school boards *have* delegated governmental powers to the Association." *Coleman*, 631 So. 2d at 774. In *Brentwood*, the United States Supreme Court held that the actions of a high school athletic association were state action due to the pervasive

22

Quoting a decision of the Supreme Court of Alabama concerning a voluntary high school athletic association, the Court stated that:

> Participation in high school athletics is an extra-curricula activity subject to regulations as to eligibility. Engaging in these activities is a privilege which may be claimed only in accordance with the standards set up for participation.
>
> The member schools are in a better position to promulgate rules governing participation in high school athletics than anyone else, and are fully cognizant for the reasons underlying such rules.
>
> If officials of a school desire to associate with other schools and prescribe conditions of eligibility for students who are to become members of the school's athletic teams, and the member schools vest final enforcement of the association's rules in boards of control, then a court should not interfere in such internal operations of the affairs of the association. . . .

*Id.* at 1081 (quoting *Scott v. Kilpatrick*, 237 So. 2d 652, 655 (Ala. 1970)). This Court also stated that "courts will not interfere in the internal affairs of a voluntary high school athletic association." *Gillard*, 352 So. 2d at 1082 (quoting *Tenn. Secondary Sch. Athletic Ass'n v. Cox*, 425 S.W. 2d 597, 602 (1968)). We further found that Gillard should have exhausted his administrative remedies within the NCAA before pursuing relief in court. *Gillard*, 352 So. 2d at 1082. We stated "[t]he authorities are clear that the administrative remedies should be invoked before resorting to the courts." *Id.* at 1082-83. Finally, we stated that "courts cannot 'make rules' to govern amateur athletics. All we can do is to apply legal precedents to the rules promulgated by the associations involved." *Id.* at 1083.

---

entwinement between the athletic association and the public schools and public officials. *Brentwood Acad.*, 531 U.S. at 298.

¶47.    Although the MHSAA is not a state administrative agency, its pervasive entwinement with our public schools indicates that its functions are comparable to those of a state administrative agency. And there is no functional difference between the well-established standard of review for private, voluntary associations and the standard of review for administrative agencies. "The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion, or arbitrariness, be accepted by the courts as conclusive." *Lowery*, 241 Miss. at 473, 130 So. 2d at 836. This Court will affirm an administrative agency's decision unless it "(1) was unsupported by substantial evidence, (2) was arbitrary and capricious, (3) was beyond the power of administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party." *Elec. Data Sys. Corp. v. Miss. Div. of Medicaid*, 853 So. 2d 1192, 1202 (Miss. 2003) (quoting *Tillmon v. Miss. State Dep't of Health*, 749 So. 2d 1017, 1021 (Miss. 1999)). I observe that a decision that is arbitrary and capricious is necessarily unsupported by substantial evidence. *Elec. Data Sys. Corp.*, 853 So. 2d at 1203 (quoting *Miss. Bureau of Narcotics v. Stacy*, 817 So. 2d 523, 526-27 (Miss. 2002)). The decisions of both private, voluntary associations and state administrative agencies are subject to judicial review for arbitrariness, and judicial review of a challenge to a decision of the MHSAA must focus on whether that decision was arbitrary and capricious. *Lowery*, 241 Miss. at 473, 130 So. 2d at 836. This limited standard of review affords deference to eligibility decisions and checks judicial interference with "the internal affairs of a voluntary high school athletic association." *Gillard*, 352 So. 2d at 1082 (quoting *Tenn. Secondary Sch. Athletic Ass'n v. Cox*, 425 S.W. 2d 597, 602 (1968)).

¶48. I would find that, because the MHSAA is a private, voluntary association, HHS properly sought injunctive relief in chancery court by filing a complaint alleging that its eligibility decision was arbitrary and capricious. And I would find that the chancellor properly reviewed the eligibility decision for arbitrariness. But I note one deficiency in the proceedings below. Rather than restricting review to the record before the MHSAA, the chancellor held a trial and admitted testimony and exhibits extraneous to the MHSAA's record. The MHSAA argues that the chancellor improperly denied its motion in limine to restrict review to its record and findings and erroneously tried the matter. HHS argues that, because it sought equitable relief in the form of an injunction, the chancellor properly expanded the record to include evidence outside the MHSAA's record. I would hold that, because HHS grounded its claim for injunctive relief in the argument that the eligibility decision was arbitrary and capricious, the record and findings of the MHSAA were all that was needed for the chancellor to determine whether the MHSAA's actions were indeed arbitrary and whether preliminary and permanent injunctive relief was warranted. Therefore, I would hold that the chancellor erred by holding a trial. I now turn to a review of the chancellor's decision.

*C. Whether the MHSAA's decision was arbitrary and capricious.*

### 1. Procedural History

¶49. Tiaria Griffin was a star basketball player at Lawrence County High School (LCHS). At the beginning of her senior year, Tiaria and her brother Steven transferred to HHS. The MHSAA declared Tiaria and Steven ineligible to participate in athletics at HHS for the 2011-2012 season, and Tiaria, Steven, and their mother, LaShannon Slay, filed a complaint for

25

injunctive relief in the Chancery Court of Forrest County on September 30, 2011. On the same day, the chancellor issued a temporary restraining order that enjoined the MHSAA from ruling Tiaria ineligible for athletic competition for ten days. Also on the same day, the MHSAA filed a notice of removal to the United States District Court for the Southern District of Mississippi, Hattiesburg Division.

¶50. On October 7, 2011, the date set for the hearing on the temporary restraining order, the chancellor held a hearing attended only by counsel for the plaintiffs. The chancellor opined that, in light of the removal to federal court, the state court proceedings were stayed and the temporary restraining order would remain in effect. But on November 22, 2011, the federal district court held that the Chancery Court of Forrest County had lacked jurisdiction to conduct the October 7, 2011, hearing or to extend the temporary restraining order, and that its action was "null and void as a matter of law." Quoting *Granny Goose Foods v. Brotherhood of Teamsters and Auto Truck Drivers*, 415 U.S. 423, 451, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974)), the federal district court held that the temporary restraining order had expired by its terms in ten days because "[a]n ex parte temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law."

¶51. On December 12, 2011, the federal district court remanded the case to the Chancery Court of Forrest County. The same day, the chancellor held a hearing to dispose of several matters, including the plaintiffs' motion for a preliminary injunction, which was granted. The injunction prevented Tiaria from participating in basketball games on December 13, 2011, and December 16, 2011, but allowed her to participate in the remaining games through

26

January 9, 2012. The chancellor granted HHS's motion to intervene. The chancellor denied the MHSAA's motion to recuse and its motion in limine to limit review to the record at the MHSAA. In ruling on the MHSAA's motion to dismiss for lack of standing, the chancellor dismissed Steven from the lawsuit because the MHSAA subsequently had ruled him eligible to participate in athletics, but allowed Slay's and Tiaria's suit to proceed.

¶52.    The MHSAA filed a petition for an interlocutory appeal from the denial of its motion to dismiss Slay and Tiaria for lack of standing. This Court granted the petition and dismissed Slay and Tiaria, leaving HHS as the sole plaintiff. At a January 9, 2012, hearing, the MHSAA argued a motion to transfer venue, which was denied. The chancellor extended the preliminary injunction until February 6, 2012. On February 6, 2012, the chancellor again extended the preliminary injunction, allowing Tiaria to play through March 19, 2012. The chancellor held a hearing and heard evidence before granting each preliminary injunction. This Court denied MHSAA's petition for an interlocutory appeal of the denial of the motion to transfer venue. The trial occurred on September 11, 2012; under Mississippi Rule of Civil Procedure 65(a)(2), the evidence from the preliminary-injunction hearings became part of the trial record.

### 2.    Evidence Before the MHSAA

¶53.    The MHSAA's record was placed into evidence at the preliminary-injunction hearings and at the trial. The MHSAA's final decision at a hearing on November 3, 2011, ruled Tiaria ineligible due to violations of three of MHSAA rules and regulations: (1) Tiaria's coach on her summer Amateur Athletics Union (AAU) basketball team also coached at HHS, which violated the special-inducement rule; (2) Tiaria's family had moved to Hattiesburg for

27

athletic purposes within sixty days of the start of the school year, which violated a residency rule that a move for athletic purposes must occur more than sixty days before the beginning of the school year; and (3) Tiaria was not in good standing at LCHS because she had not yet completed her punishment for a failed drug test in spring 2011, which violated the rule that a student must leave a former school in good standing in order to participate in athletics at a new school.

¶54. The MHSAA's initial decision was memorialized in a "Special Eligibility Form" filled out by a representative of each school and Don Hinton, the executive director of the MHSAA. On August 23, 2011, the HHS representative wrote that Tiaria had changed schools because her parent had relocated to Hattiesburg when her job ended. On August 25, 2011, Daryl Scoggin, the principal of LCHS, wrote that he did not consider Tiaria to be in good standing at LCHS, and that he considered her not eligible at HHS. Scoggin noted "see attached documentation" and that he was waiting for legal advice before releasing the documentation. On August 29, 2011, Hinton wrote that the MHSAA had declared Tiaria ineligible. The form indicated that the completed form was faxed to both schools.

¶55. A fax date indicates that, on August 25, 2011, before the eligibility ruling, Scoggin faxed letters to MHSAA supporting his opinion that Tiaria was ineligible. One letter was from Tiaria's basketball coach at LCHS, Vicki Rutland, to Scoggin. This letter stated that, on July 26, 2011, Slay said Tiaria was going to transfer to HHS. Slay said that she was moving for a new job, and that Tiaria wanted to move because, due to an incident in April 2011, she would have to sit out the first two weeks of the basketball season if she stayed at LCHS. Rutland expressed concern that Tiaria was moving to HHS because Burnell Wesco,

28

the coach of Tiaria's AAU team, also coached at HHS. Rutland stated that she thought there was a pattern of recruiting at HHS.

¶56.    Scoggin also faxed a letter from himself to Rickey Neaves, the MHSAA's associate director of athletics, explaining his views on Tiaria's eligibility. Scoggin stated that Tiaria had practiced with the LCHS team all summer and had attended the LCHS basketball camp. Scoggin stated that he had met with Slay on July 27, 2011, and she had told him about the move. Slay stated she had begun looking for a place to live in Hattiesburg in May 2011 and had put down a deposit on a rental property in early June, but was unable to pay the first month's rent or to move at that time. Scoggin opined that Tiaria had moved within sixty days of the start of school. Scoggin also expressed concern that Wesco had been actively recruiting Tiaria to play at HHS.

¶57.    HHS appealed the MHSAA's ruling, and a hearing occurred before the MHSAA's executive board (the Board) on September 7, 2011. The clearest and most concise summation of what occurred at the hearing is the Board's minutes, which state the following:

> Mr. Hinton and Mr. Neaves briefed the Board on Tiaria and Steven Griffin, transfer students from [LCHS] to [HHS]. Mr. Hinton stated that Tiaria Griffin is a high profile basketball player at Lawrence County. He also stated that according to documentation, the mother leased a home on June 1, 2011 and only made a deposit, not rent for the month. At that time the mother received one door key, no mailbox key, nor garage remote. Mr. Neaves stated that Tiaria attended the entire summer basketball program at Lawrence County and also went to team camp with Lawrence County. He also stated that Tiaria failed one drug test at Lawrence County, prior to leaving. Also, Tiaria's AAU coach is Coach Burnell Wesco, who is the ninth grade basketball coach at Hattiesburg.

> Dr. Daryl Scoggin, Principal, Mike Davis, Athletic Director, and Coach Vicki Rutland from [LCHS] appeared before the Board. Dr. Scoggin stated that on July 27, 2011, he met with [Slay] and stated to her that he had heard

29

rumors of Tiaria moving to Hattiesburg. Ms. Slay stated to him that she had contacted Hattiesburg in April/May concerning a job, as her job in the Lawrence County district was coming to an end. Dr. Scoggin also stated that Tiaria tested positive for marijuana in the spring and according to district policy, she would miss two weeks of a sport season, as this was her first offense. Dr. Scoggin also stated that the family lives in a trailer, which is in front of the grandmother's house, in the Lawrence County school zone. Dr. Scoggin also stated that Ms. Slay's job ended in May, but when she withdrew Tiaria in July, she owed $1,000 for fundraisers, which she paid in cash at the time she was without a job.

Coach Rutland stated that in her meeting with Ms. Slay, on June 27, 2011, Ms. Slay verified that Tiaria was leaving Lawrence County – stating that Tiaria was being threatened on Facebook. Coach Rutland also stated that Ms. Slay is the team's statistician. Coach Rutland said that Tiaria attended Lawrence County's summer program and she coached Tiaria in the All-Star games held July 8-9, 2011. Coach Rutland witnessed Tiaria being friendly with Coach Ernie Watson (boy's basketball coach at Hattiesburg) during the All-Star games. Coach Rutland also stated that some of the Lawrence County games, in which Tiaria participated, had shown up on Coach Wesco's website, her AAU coach.

Coach Davis stated that Tiaria had shown up for Lawrence County's first football pep rally of the 2011 school year and she was also seen on a Saturday playing basketball with boys during open gym.

Appearing before the Board from Hattiesburg were: Coach Cheyenne Trussell, Athletic Director, Coach Burnell Wesco, Coach Ernie Watson, Coach Debose-Jackson, Tiaria Griffin, and Ms. Slay, mother of Tiaria Griffin. Coach Trussell questioned if the MHSAA did a thorough investigation concerning residency, drug test, and recruiting. He stated that he received a call last spring from Ms. Slay asking what she needed to do to move her children into the Hattiesburg school district. The conversation did not include making her children eligible for athletics. Coach Trussell stated to Ms. Slay that a bona fide move must be made.

Ms. Slay stated that her job in the Lawrence County School District was coming to an end in May and her other part-time job in Monticello closed in July, 2011. She stated that she moved to Hattiesburg to take a new job, to be closer to her oldest daughter (attending Mississippi Gulf Coast Community College), and still be close to her family in Monticello. Ms. Slay stated she received the keys to her rental the end of May and started moving in on June 1st and was completely moved in by June 4th or 5th. She stated that Tiaria did

30

not move until July, in order that she could attend the Lawrence County summer basketball program and play in the All-Star game. Ms. Slay stated that she did not tell Coach Rutland that Tiaria would not return to [LCHS] until after the All-Star games. Ms. Slay stated that she currently works for the Hattiesburg Public Schools, as a teacher assistant.

Coach Wescoe [sic] stated that Tiaria started playing AAU basketball when she was in the seventh grade. He stated that it is his job, as an AAU coach, to showcase players, help them develop as players. He stated that four of the five starters for Lawrence County play for his AAU team. He also stated that he had nothing to gain by Tiaria transferring to Hattiesburg, since she is a senior this school year and he coach's [sic] ninth grade basketball.

Coach Debose-Jackson [the varsity basketball coach at HHS] stated that she made no contact with Tiaria at any time.

Tiaria stated that she had asked Coach Watson if he had any money so that she and a friend could get something at the concession stand. Coach Watson stated that he joked with Tiaria that he bet she couldn't score 30 points.

Larry Dolan motioned [sic] to grant eligibility to Tiaria and Steven Griffin with Marietta James seconding the motion.

Vote 3:6, motion failed.

The Board voted to gather additional information to further consider the eligibility of Tiaria and Steven, consisting of proof of the date the electricity was turned on in their rental home, copies of electricity bills, dates of money orders or cashier's checks used for rent, copies of such money orders or cashier's checks, and two proofs of residency.

¶58. The Board reconvened on September 15, 2011, to consider the additional evidence that had been submitted on the question of whether Slay's move had occurred more than sixty days before school started on August 7, 2011. These documents included a lease on a home in Hattiesburg dated June 1, 2011. The electricity bills showed that Slay's landlord, Shirley Shoemaker, had paid the electricity bills until July 19, 2011, when the electricity was

31

transferred to Slay. The Board found that very little electricity had been used in June and in the first part of July compared to the usage after the bill was transferred to Slay, and that "according to the power bills, the family was not residing in Hattiesburg prior to 60 days of the beginning of school." The Board recognized that Slay had submitted copies of money orders showing she had paid rent for the months of June and July. Slay explained that she had used little electricity due to travel. But the Board found that, while "the lease cannot be refuted," because the electricity bill was not transferred to Slay until July 19, 2011, the move occurred within sixty days of the start of school. The Board voted four-six to deny HHS's appeal.

¶59. On October 11, 2011, Cheyenne Trussell, the executive director of student activities of the Hattiesburg Public School District, requested reconsideration of the decision at the upcoming November 3, 2011, Board meeting. The Board granted the request. According to the November 3, 2011, hearing minutes, Trussell argued that the MHSAA had not adequately investigated Tiaria's case. He admitted that, while Coach Wesco does not assist the girls' varsity basketball team, he sometimes sat on the bench during varsity games. The Board again voted to find Tiaria ineligible to participate in athletics at HHS based on the three rules violations. However, the Board voted to grant eligiblity to her brother, Steven, finding that he had not moved for athletic purposes.

¶60. On November 8, 2011, MHSAA provided HHS with a notice of penalty for playing Tiaria in a game on November 5, 2011, against McComb High School. As a penalty for playing an ineligible player, MHSAA placed HHS on probation through the end of the season and ordered it to forfeit the game, remove Tiaria from the team, and pay a $500 fine. On

32

November 14, 2011, MHSAA penalized HHS for playing Tiaria in a game against Harrison Central High School on November 8, 2011, while on probation. The MHSAA ordered HHS to forfeit the game and to remove Tiaria from the team and extended probation to the post-season. On November 21, 2011, MHSAA penalized HHS for playing Tiaria in a November 18, 2011, game against Moss Point High School while on probation. It ordered HHS to forfeit the game and to pay a $1,000 fine and suspended HHS through the end of the school year. Although all three notices of penalty informed HHS of its right to appeal, it is undisputed that HHS did not avail itself of that right.

### 3. Trial

¶61. The chancellor held a five-day trial on the issues of Tiaria's eligibility and the penalties assessed against HHS for playing Tiaria after she had been deemed ineligible. At the trial, many of the witnesses who had appeared before the Board gave in-depth testimony about the evidence of the three rules violations and the MHSAA's decision-making process. Because I would find that the chancellor erred by holding a trial on the merits of the eligibility decision instead of limiting review to the MHSAA's record, I do not recite the additional evidence concerning the eligibility decision that was adduced at the trial, much of which was cumulative of the MHSAA's record.

### 4. **The MHSAA's decision was not arbitrary and capricious**.

*a. The Special-Inducement Rule*

¶62. The MHSAA declared Tiaria ineligible based upon three violations of its rules and regulations. Of these three rules violations, the evidence most strongly supported a violation

33

of the MHSAA's special-inducement rule. The 2011-2012 MHSAA Handbook, which contains the applicable rules and regulations, states:

> A pupil must not have been given any special inducement of any kind to attend a school to play on an athletic team. SPECIAL INDUCEMENT IS INTERPRETED TO MEAN:
>
> . . .
>
> 10. A student that plays for a coach or team made up of students from a school (school B) other than his/her home school during the non-sports season may not be eligible for school B unless a hardship is granted by the MHSAA or the student has been in school B for one calendar year from the date of enrollment.

¶63. By its terms, the special-inducement rule creates an unrebuttable presumption of inducement when the specified facts exist. If a student transfers to a school that employs, as a coach, the student's non-sports-season coach, the rule is violated. The rule contains no exception for a situation where the transfer student does not actually play for the coach's team at the new school. Nor does the rule contain an exception for a situation where no evidence suggests that the coach urged the student to transfer.[8] Here, there was evidence before the MHSAA that, in the summer of 2011, Tiaria played on an AAU team coached by Wesco, who was the ninth-grade girls' basketball coach at HHS. The MHSAA found that these facts violated the special-inducement rule because, during the non-sports season, Tiaria had played for a coach from HHS. Therefore, she was ineligible to play at HHS for one calendar year unless a hardship was granted.

---

[8] The MHSAA's adoption of a rule that inducement is presumed when a student transfers to a school that employs the student's off-season coach indicates that it considered the situation so rife with the potential for impropriety that nothing further need be shown.

34

¶64. The chancellor found that this decision was arbitrary and capricious. The chancellor found that Tiaria's family had moved to Hattiesburg not for athletic purposes, but because Slay had lost her job in Lawrence County and had obtained employment in the Hattiesburg Public School District. The chancellor concluded that the MHSAA had strictly interpreted the special-inducement provision, and that doing so was unfair because it would prevent a student from participating in athletics if her family moved for employment. The chancellor ruled that the MHSAA should have granted a hardship to Tiaria because her family had moved due to Slay's job change.

¶65. The chancellor's findings reveal that she impermissibly reweighed the facts and substituted her judgment for that of the MHSAA. Substantial evidence before the MHSAA established a violation of the special-inducement rule because Wesco, Tiaria's summer AAU coach, worked as a coach at HHS. The chancellor determined that the MHSAA should not have applied the special-inducement rule because Tiaria had moved due to her mother's job change. Even if that fact could be considered a legitimate reason to overturn the eligibility decision, the MHSAA did not find that Tiaria had moved due to her mother's job change. Rather, the MHSAA found, after weighing the conflicting evidence, that the family had moved to Hattiesburg to further Tiaria's athletic career. And while the chancellor found that the MHSAA should have granted a hardship waiver, the MHSAA's rules clearly provide that a hardship application must be made by the school's principal, and it is undisputed that HHS

made no hardship application in this case.[9] I would hold that the MHSAA's finding of a violation of the special-inducement rule was not arbitrary and capricious.

### b. The Residency Requirement

¶66.    The MHSAA also found a violation of the residency requirement based on its finding that Tiaria's family had moved to Hattiesburg for athletic purposes within sixty days of the beginning of school. The 2011-2012 MHSAA Handbook provides that "[a] pupil must attend school in the school district in which his parents are actual bona fide residents," and defines "bona fide residence" as a residence "where the family actually lives." The Handbook also states that "[a] transfer student is one whose parents or guardian has moved from one school district to another and established a bona fide residence therein for some other purpose than conferring athletic or interscholastic eligibility on the student." The sixty-day rule states: "[i]f a family established a bona fide residence in a school area for the purpose of making a pupil eligible for athletics, the family must establish a bona fide residence at least 60 days prior to the opening of school."

¶67.    The chancellor accepted copious testimony and documentary evidence concerning the circumstances of the family's move to Hattiesburg, and she concluded that the family had moved due to Slay's job change and not for athletic purposes. But, as I would hold, appellate review to determine whether an eligibility decision of the MHSAA is arbitrary is properly limited to the record and findings of the MHSAA. Turning to those findings, the MHSAA

---

[9] The facts of this case do not obviously implicate the hardship rules, which provide that serious injury or prolonged illness are grounds for a hardship request. The rules state that "ordinary cases of ineligibility shall not be considered as coming under the hardship category."

found that Tiaria's family had moved to Hattiesburg for athletic purposes, that is, to further Tiaria's athletic career. That finding triggered the requirement that the move must have occurred at least sixty days before school began on August 7, 2011.

¶68. I would find that the MHSAA's conclusion that Tiaria's family had moved "for the purpose of making a pupil eligible for athletics" within sixty days of the beginning of the 2011 school year was supported by substantial evidence. Rutland's and Scoggin's letters supported the conclusion that Coach Wesco had induced Tiaria's move to Hattiesburg. The MHSAA, in its experience evaluating recruiting allegations, was entitled to weigh and rely upon the opinions of Rutland and Scoggin that Wesco had been trying to recruit Tiaria to play for HHS. While competing evidence was before the MHSAA that the move was prompted by Slay's loss of her teacher's assistant position in Lawrence County and assumption of a new teacher's assistant position in Hattiesburg, the MHSAA was entitled to weigh this evidence against the conflicting evidence of recruiting and to conclude that Tiaria's family had moved to Hattiesburg to further her athletic career. HHS argues that the MHSAA's finding that Steven was eligible to participate in athletics conflicts with its finding that the family had moved for athletic purposes, making its decision arbitrary. But the MHSAA's decisions as to Steven and Tiaria do not conflict because the MHSAA was permitted to find that, because the family had moved to further Tiaria's athletic career, not Steven's, Steven was not disqualified under the rule.

¶69. And the MHSAA's finding that Tiaria's family had moved within sixty days of the beginning of school also was supported by substantial evidence. While a lease dated June 1, 2011, supported Slay's contention that she had moved the family to Hattiesburg more than

37

sixty days before school started, the electricity bill remained in the name of the landlord until mid-July, and electricity bills showed drastically increased power usage after mid-July. The MHSAA deemed these facts to be significant indicators of the actual date of the move. Also, according to Scoggin's letter, Slay told him in July that she had placed a deposit on a home in June, but had been unable to move at that time. And basketball practice schedules showed that Tiaria consistently practiced with the LCHS team in the month of June. Again, the MHSAA weighed the conflicting evidence and determined that Tiaria's family had moved to Hattiesburg within sixty days of the beginning of the school year. Its conclusion was supported by substantial evidence and was not arbitrary and capricious.

### c. The Lack-of-Good-Standing Rule

¶70. The MHSAA also found Tiaria ineligible because she was not in good standing when she left LCHS. The Handbook states that "[a]ny transfer student must be in good standing from the school he/she is leaving in order to receive eligibility at his/her new school." Scoggin's letter stated that Tiaria was not in good standing at the end of her school year at LCHS. Testimony at the September 7, 2011, hearing indicated that Tiaria was not in good standing because she had failed a drug test and, as a penalty, she would have to sit out the first two games of the 2011-2012 basketball season. Rutland testified that Tiaria had played for LCHS in an all-star game in July.

¶71. The chancellor found that the MHSAA's finding that Tiaria was not in good standing was arbitrary and capricious. The chancellor, on review of subpoenaed drug-test records from LCHS, found that the redacted records were unclear as to whether Tiaria actually had failed the drug test. The chancellor further found that, because LCHS had allowed Tiaria to play

38

in the all-star game in July, LCHS was disingenuous when it deemed her not in good standing. HHS argues that the chancellor essentially found that, because LCHS had played Tiaria in in the all-star game, it was estopped from deeming her not in good standing when she transferred to HHS.

¶72. The evidence before the MHSAA substantially supported its finding that Tiaria was not in good standing at LCHS when she transferred to HHS. Before the MHSAA, it was undisputed that Tiaria had failed the drug test, and the chancellor erred by analyzing the subpoenaed drug-test records, which were outside the record and findings of the MHSAA. I recognize that the fact that LCHS allowed Tiaria to play in an all-star game when it had deemed her not in good standing and suspended her from the first two games of the regular season casts doubt on the legitimacy of LCHS's claim that Tiaria was not in good standing when she transferred to HHS. But the school boards have entrusted to the MHSAA the duty to assess the credibility of both sides of an athletic-eligibility dispute. A decision that is fairly debatable cannot be arbitrary and capricious. *Elec. Data Sys. Corp.*, 853 So. 2d at 1203 (quoting *Stacy*, 817 So. 2d at 526-27). While reasonable minds could differ, I would find that the testimony of Scoggin that Tiaria was not in good standing constituted substantial evidence supporting the decision of the MHSAA.

> **5.    The chancellor lacked jurisdiction to reverse penalties imposed on HHS because HHS did not exhaust its administrative remedies.**

¶73. The MHSAA argues that the chancellor erred by vacating the penalties it had imposed upon HHS for playing Tiaria while ineligible on November 5, 2011; November 8, 2011; and November 18, 2011. The MHSAA argues that the chancellor lacked jurisdiction to address

the penalties because HHS had failed to exhaust its administrative remedies. The MHSAA's 2011-2012 handbook gives a school five days to appeal to the Executive Board from the imposition of a penalty. HHS argues that exhaustion would have been futile because the propriety of the penalties rested on the MHSAA's declaration that Tiaria was ineligible, and that issue already had been determined adversely to HHS and was the subject of litigation before the chancery court.

¶74.    This Court has held that a party must exhaust all administrative remedies provided by a private, voluntary association before seeking injunctive relief against the association. *Multiple Listing Serv. of Jackson, Inc. v. Century 21 Cantrell Real Estate, Inc.*, 390 So. 2d 982, 983 (Miss. 1980). The failure to exhaust administrative remedies presents a jurisdictional question which is subject to de novo review. *Town of Bolton v. Chevron Oil Co.*, 919 So. 2d 1101, 1104 (Miss. Ct. App. 2005). "A complainant must exhaust the administrative remedies available to him before resorting to the courts for resolution of his dispute." *State v. Beebe*, 687 So. 2d 702, 704 (Miss. 1996). But there are exceptions to the exhaustion requirement. The following factors weigh against application of the doctrine of exhaustion: (1) "the pursuit of the administrative remedy would result in irreparable harm"; (2) "the agency clearly lacks jurisdiction"; (3) "the agency's position is clearly illegal"; (4) "the dispositive question is one of law"; (5) "exhaustion would be futile"; and (6) "comparatively, the action can be disposed of with less expense and more efficiently in the judicial arena." *Pub. Employees' Ret. Sys. v. Hawkins*, 781 So. 2d 899, 906 (Miss. 2001) (citing *Miss. Dep't of Envtl. Quality v. Weems*, 653 So. 2d 266, 278 (Miss. 1995)). We also have declined to apply the exhaustion doctrine when "(1) no adequate administrative remedy

was provided; (2) there was reasonable doubt as to the availability and adequacy of the administrative remedy; and (3) the question in dispute was purely legal, the interpretation of which did not require the agency's expertise." *Hawkins*, 781 So. 2d at 906 (citing *Campbell Sixty-Six Exp., Inc. v. J. & G. Exp., Inc.*, 244 Miss. 427, 440, 141 So. 2d 720, 726 (1962)).

¶75.   I would not find an exception to the exhaustion requirement. I would hold that HHS was required to exhaust the MHSAA's appeal process before seeking relief from the chancery court. While HHS argues that its use of the the MHSAA appeals process would have been futile, Trussell testified that HHS decided to play Tiaria while she was ineligible because of the chancellor's October 7, 2011, ruling that had extended the temporary restraining order. Yet, HHS never presented that argument to the MHSAA by appealing the penalties. An appeal would have permitted the MHSAA to revisit its decision to impose the penalties after hearing HHS's arguments, and the MHSAA was fully empowered to alter its decision if it determined relief was warranted. Under these circumstances, I find no exception to the exhaustion doctrine. Because HHS failed to exhaust its administrative remedies by appealing the penalties to the Executive Board, the chancellor lacked jurisdiction to address the penalties, and they should be reversed.

### D. Conclusion

¶76.   I would hold that the decision of a private, voluntary association such as the MHSAA may be reviewed for arbitrariness. And I would find that the decision of the MHSAA declaring Tiaria ineligible to participate in athletics at HHS in the 2011-2012 school year was not arbitrary. I would further find that, because HHS failed to exhaust its administrative

remedies by appealing the penalties, the chancellor had no jurisdiction to address the penalties.

**RANDOLPH, P.J., JOINS THIS OPINION IN PART A ONLY. CHANDLER AND KING, JJ., JOIN THIS OPINION IN PART.**

**KING, JUSTICE, DISSENTING:**

¶77. The majority finds that Hattiesburg High School's (HHS) complaint was not predicated on a legally cognizable claim; I respectfully disagree. HHS alleged in its complaint that the "Association's actions and conduct did not follow its own rules and regulations regarding residency determination of the minor Plaintiffs. The MHSAA's actions in denying the minor Plaintiffs eligibility for competition in athletic activities were arbitrary and capricious." If the MHSAA failed to follow its own rules and regulations and acted arbitrarily in doing so, the MHSAA would have breached its contract with HHS by acting without good faith. Thus, HHS did in fact allege that the MHSAA had breached its contract with HHS and did assert a legally cognizable claim. Explicitly stating that the MHSAA had breached its contract with HHS, while desirable perhaps, was unnecessary.

¶78. As Chief Justice Waller states, this Court's precedent clearly shows that decisions of voluntary associations may be reviewed for arbitrariness. "The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion, or arbitrariness, be accepted by the courts as conclusive." *Lowery v. Int'l Bhd. of Boilermakers*, 130 So. 2d 831, 836 (Miss. 1961). The Court of Appeals reaffirmed this principle in *Morf*, holding that a private organization's decisions may be reviewed for arbitrariness. *Morf v. N. Cent. Miss. Bd. of Realtors, Inc.*, 27 So. 3d 1188 (Miss. Ct. App.

42

2009) ("[I]t is clear to this Court that the Board acted arbitrarily and capriciously in disciplining the Morfs.").

¶79. While the majority distinguishes *Lowery* and states that the *Lowery* Court was not reviewing the union's decisions simply for arbitrariness, the fact that the *Lowery* Court was not solely reviewing for arbitrariness fails to show that HHS's complaint was deficient. As this Court stated in *Trail*, "[o]nce a school decides to create a sports program and establish eligibility rules, the school–or as in this case, the MHSAA–has a duty to follow those rules. . . ." *Mississippi High Sch. Activities Ass'n, Inc. v. R. T. ex rel. Trail*, 163 So. 3d 274 (Miss. 2015). HHS alleged in its complaint that the MHSAA did not follow its rules and acted arbitrarily in doing so. Therefore, HHS alleged that the MHSAA had breached its contractual duty to follow its rules and bylaws.

¶80. This Court, as well as many others, has held previously that a claim of arbitrariness invokes the jurisdiction of the courts.[10] HHS's claim that the MHSAA failed to follow its own rules–and acted arbitrarily in doing so–sufficiently alleges that the MHSAA breached its contractual duty with HHS. As such, HHS's complaint alleged a cause of action, and the chancery court had jurisdiction to review HHS's claims.

---

[10]*See Alabama High Sch. Athletic Ass'n v. Rose*, 446 So. 2d 1, 4 (Ala. 1984) ("*Of course*, if the acts of an association are the result of fraud, lack of jurisdiction, collusion, *or arbitrariness*, the courts will intervene to protect an injured [party's] rights.") (emphasis added). *See also Scott v. Oklahoma Secondary Sch. Activities Ass'n*, 313 P. 3d 891 (Okla. 2013); *Nat'l Collegiate Athletic Ass'n v. Lasege*, 53 S. W. 3d 77 (Ky. 2001); *Alabama High Sch. Athletic Ass'n v. Rose*, 446 So. 2d 1 (Ala. 1984); *Anderson v. South Dakota High Sch. Activities Ass'n*, 247 N. W. 2d. 481 (S.D. 1976); *Robinson v. Illinois High Sch. Ass'n*, 195 N. E. 2d 38 (Ill. App. 1963); *State ex rel. Ohio High Sch. Athletic Ass'n v. Judges of Court of Common Pleas of Stark County*, 181 N. E. 2d 261 (Ohio 1962).

¶81.  I believe that the ruling of the MHSAA concerning Tiaria's eligibility was not supported by substantial evidence, and thus was by definition arbitrary and capricious. The MHSAA declared Tiaria to be ineligible to participate in athletics for three reasons. Those reasons, in the order of emphasis placed on them, are: one, special inducement; two, residency; and three, lack of good standing.

    *1.    Special Inducement*

¶82.  The MHSAA Handbook provides that:

> A pupil must not have been given any special inducement of any kind to attend a school to play on an athletic team. Special inducement is interpreted to mean:

> 10. A student that plays for a coach or team made up of students from a school (school B) other than his/her home school during the non-sports season may not be eligible for school B unless a hardship is granted by the MHSAA or the student has been in school B for one calendar year from the date of enrollment.

¶83.  The MHSAA's application of this rule creates a presumption of special inducement, which may not be rebutted even in the face of evidence to the contrary. According to the MHSAA, under this presumption, which is not subject to rebuttal, because Tiaria played Amateur Athletics Union (AAU) summer basketball on a team coached by the Hattiesburg High School ninth-grade basketball coach, the evidence strongly supported a violation of the special-inducement rule. However, the mere fact that Tiaria played basketball in the off-season under Coach Burnell Wesco is not enough to establish any special inducement. Other than this unrebuttable presumption, no evidence was presented to the MHSAA to even remotely suggest that Coach Wesco, or any person associated with HHS, had induced Tiaria to transfer to HHS. Such a finding in the face of all of the uncontradicted evidence is by definition arbitrary and capricious.

44

¶84. It is uncontradicted that LaShannon Slay, Tiaria's mother, moved to Hattiesburg for employment purposes. On Tiaria's special eligibility form, the reason stated for Tiaria's transfer to Hattiesburg was her mother's relocation to Hattiesburg for purposes of employment. That form also refers to attached documents. The attached documents included two letters: one from Vicki Rutland to Daryl Scoggin, and the other from Scoggin to Rickey Neaves.[11] In Rutland's letter to Scoggin, she merely expressed her belief that Hattiesburg was recruiting players. However, the mere expression of a belief is not evidence. Rutland wrote that Tiaria was friendly with the coach of the Hattiesburg boys' basketball team at a game, and that Rutland felt that there was a pattern of recruiting at Hattiesburg. Similarly, in Scoggin's letter to Neaves, Scoggin wrote that he strongly believed Coach Wesco had been actively recruiting Tiaria. Even Scoggin's strongly held belief is not evidence. The only evidence Scoggin gave to support his belief was a video of Tiaria playing basketball on Coach Wesco's website.

¶85. "Substantial evidence means something more than a 'mere scintilla' or suspicion." *Public Employees' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (Miss. 2000). "If an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious." *Id.* at 430. It is uncontested that Slay's job as a teaching assistant in Lawrence County ended in May 2011. It is uncontested that Slay accepted a position as a teaching assistant with the Hattiesburg School District. It is uncontested that there was no evidence in the record showing any available job opportunities

---

[11]Rutland was Tiaria's basketball coach at Lawrence County High School (LCHS). Scoggin was the principal at LCHS. Neaves was the associate director of the MHSAA.

for Slay outside of the Hattiesburg area. There is no allegation, and nothing in the record before the MHSAA to imply or suggest that Coach Wesco or HHS induced Slay to apply for the open teaching position in Hattiesburg.

¶86. The application of this rule and the holding of the MHSAA, under the facts of this case, is at best arbitrary and capricious. Tiaria's brother, Steven, who also moved to Hattiesburg because of his mother's employment, was not found to be ineligible to participate in athletics, while Tiaria was.

¶87. The mindless and robotic application of this rule in the face of all of the contrary facts is, beyond question, not supported by substantial evidence, and is thus, by definition, arbitrary and capricious. No substantial evidence supports the conclusion that Tiaria was induced by Coach Wesco to play basketball at HHS in violation of the MHSAA's special inducement rule. Rutland's and Scoggin's mere speculation is not enough.

2.    *Residency*

¶88. The MHSAA's finding that Tiaria moved to Hattiesburg to become athletically eligible also was arbitrary and capricious and not supported by substantial evidence. A pupil must be a "bona fide resident" of a new school district at least sixty days prior to the opening of school only if the pupil moved into the school district for the sole purpose of being athletically eligible. As discussed above, there was not substantial evidence showing that Slay, Tiaria, and Steven moved to Hattiesburg so Tiaria could become athletically eligible at HHS. It is undisputed that Slay's position as a teaching assistant in Lawrence County was terminated in May 2011. Slay also stated at a MHSAA hearing that her part-time job in Monticello closed in July of the same year.

¶89. Slay no longer had a source of income coming from either the Lawrence County School District (LCSD) or Monticello. Hattiesburg had a similar job opening for a teaching assistant. Slay applied for and accepted the position, requiring Slay to move and her daughter also to move with her. Slay did not voluntarily terminate her position with the LCSD or Monticello in order to pursue employment in Hattiesburg. Slay's position with the LCSD was terminated, forcing her to find employment elsewhere. Again, Rutland's and Scoggin's mere suspicions and concerns that Coach Wesco had been actively recruiting Tiaria are not enough to meet the substantial evidence burden of showing that Tiaria moved to Hattiesburg for the sole purpose of being athletically eligible.

### 3. Lack of good standing

¶90. In the case of a transfer student, the MHSAA Handbook requires that the student be in good standing with the school she is leaving in order to be eligible at her new school. The Handbook does not define good standing or give guidelines as to what would make an athlete not in good standing. The same rule states that "the school shall secure a transcript of the high school work completed by the student and a transfer form signed by the principal of the school from whence he comes."[12]

¶91. Testimony that Tiaria had failed a drug test and would have to sit out the first two games of the season does not automatically establish there was substantial evidence showing Tiaria was not in good standing at LCHS. There was no evidence showing a notation on Tiaria's transcript or transfer form that she was not in good standing with LCHS because of

---

[12]The wording of the MHSAA Handbook implies academic good standing.

the suspension. No evidence was established that the MHSAA had guidelines concerning drug tests and athletic standing. Further, LCHS allowed Tiaria to play basketball for the school in an all-star game in July, after Tiaria had failed the drug test and after imposition of the penalty. To rule that Tiaria was not in good standing with LCHS, therefore making her ineligible to play at Hattiesburg, solely based on testimony that Tiaria had failed a drug test and was required to sit out the first two games of the season, was arbitrary and capricious.

¶92. I conclude that the MHSAA had no substantial evidence to rule Tiaria ineligible to play basketball at HHS and that it thus breached its contract by this arbitrary and capricious action, and I would affirm the chancellor's holding on this issue. Therefore, I respectfully dissent.

**RANDOLPH, P.J.**, **AND CHANDLER, J., JOIN THIS OPINION. WALLER, C.J., JOINS THIS OPINION IN PART.**